BENJAMIN F. MARBLE and others, petitioners for injunction, *vs.* TURNER MCKENNEY.

*Petition for injunction—practice in. School district—appeal from action of. Record of meeting. School-house—location of—money raised for erecting—when illegal.*

In cases of petition by 'ten taxable inhabitants' of certain *quasi* corporations for injunction, the common practice of continuing the temporary injunction from term to term until the case is ready for final hearing, unless it is sooner dissolved on motion, is not in contravention of R. S. of 1857, c. 77, § 10.

And where, in such case, the docket showed the special entry, 'temporary injunction to continue to end of next term, and time of taking testimony extended to same time' followed the next term by the entry—'continued as before,' the latter entry has the same effect as the former.

Marble *v.* McKenney.

Money raised for the erection of a school-house upon a lot other than the one legally designated by the municipal officers of a town, upon a proper appeal from the action of a school district, is deemed to be raised for an illegal purpose.

When a meeting of a school district has been legally called, notified and held for the purpose of locating a school-house, the clerk thereof cannot so destroy the effect of the action of the district as to prevent an appeal therefrom, by refusing to record the application, warrant and return thereon, for the next meeting, so long as clear proof of the facts can be made *aliunde.*

On a petition by 'ten taxable inhabitants' of a school district, praying that the town treasurer be enjoined from paying out money raised for the purpose of erecting a school-house upon a lot other than that legally designated by the municipal officers on appeal from the action of the district, the court will make the injunction perpetual when the only error pointed out is the omission of the notification of the school-district meeting, to state that the public and conspicuous places in which the notices were posted, were within the district, especially when such is the real fact and the notice of the meeting, at which the money was raised, so states.

·PETITION by Benjamin F. Marble and nine others, taxable inhabitants of School District No. 1, in Woolwich, under Pub. Laws of 1864, c. 239, against the town treasurer.

The case is stated in the opinion.

*J. S. Baker,* for the petitioners, cited *Soper* v. *School District in Livermore,* 28 Maine, 193; *Collins* v. *School District in Liberty,* 52 Maine, 522; R. S. of 1857, c. 11, §§ 27, 28, 29.

Effect of appeal, *Campbell* v. *Howard,* 5 Mass. 376; *Keen* v. *Turner,* 13 Mass. 266; *Penhallow* v. *Doane,* 3 Dall. 87–119; *Suggs* v. *Suggs,* 1 Overt. 2; *Davis* v. *The Seneca,* Gilpin, 34.

*Tallman & Larrabee,* for the respondents.

The injunction of Sept. 16, 1868, was temporary, and without further action on the part of the petitioners could not continue beyond the end of the next term. R. S. of 1857, c. 77, § 10. The injunction, therefore, was dissolved by force of the statute. 1 Hoffman's Ch. Pr. 336.

The money was not raised 'for any purpose other than those for which the district has a legal right.' Pub. Laws of 1864, c. 239. But for a legal purpose. R. S. of 1857, c. 11, § 22.

The district, in raising the money, was acting within its legitimate sphere. *Johnson* v. *Thorndike*, 56 Maine, 37.

The money was raised at a legal meeting. No objection has been raised against it.

As the record of the school district stood at the date of this petition, and to April term, 1869, there was nothing to show for what purpose the meeting of March 28, 1867, was called. The application and warrant not having been recorded, there was no legal starting-point from which to appeal under R. S. of 1857, c. 11, § 27.

The return does not show that the places where the notices were posted were within the district, and hence the meeting was illegal. R. S., c. 11, § 18 ; *Clark* v. *Wardwell*, 55 Maine, 66.

BARROWS, J. If obstinate persistency on the part of a small numerical majority of the voters in a school district, in locating and building the district school-house where it pleased themselves, in defiance of repeated decisions of the statute appellate tribunal, and of the provisions of law, and in total disregard of the wishes and rights of a minority, embracing nearly half the legal voters of the district, would make a good case for this respondent, he ought to prevail.

The facts appear to be in brief as follows: The old school-house in the district having been burned, at a meeting held March 28, 1867, the district, under an appropriate article in the warrant, voted, eighteen to fourteen, to locate ' on the spot occupied by the old one,' and the clerk recorded the vote, specifying the location for which the minority voted. The records further show, that upon an appeal claimed by three of the minority, under the provisions of R. S. of 1857, c. 11, § 27, the selectmen of the town, after due notice, on the 13th of April, 1867, unanimously decided in favor of the spot selected by the minority, and located the school-house there, and certified their decision to the clerk of the district the same day ; and, on the 23d of May, duly laid out a lot for that purpose, and filed their location, with the boundaries and admeas-

Marble *v.* McKenney.

urements, with the district clerk on the 18th of June, 1867, awarding damages to the owners of the lot in the sum of $45. The district, however, did not 'proceed to erect' the school-house there according to the requirement of the statute, but the majority within the year united with the owners of the lot in a petition to the county commissioners, under R. S. of 1857, c. 11, § 29, to have both the questions of location and damages tried by a jury. But after the jury had been ordered, and the warrant issued, apparently distrusting the result, the petitioners asked leave of the county commissioners to withdraw their petition; notwithstanding which, it would seem that the county commissioners declined to recall their warrant, and on the 11th of May, 1868, the jury was impaneled, and made up and signed their verdict, affirming the decision of the selectmen as to the location, and ordering the payment of $30.30 as damages to the owners of the lot.

But, pending these proceedings, the majority of the district, who favored the old location, procured a meeting of the district on the 8th of April, 1868, at which the district again voted, twenty to fifteen, to locate the school-house on the old lot, the minority adhering to the location made by the selectmen at their request the year preceding. Regardless of the decision of the selectmen and of the proceedings still pending, the majority went on, at this meeting, and voted to build the house and complete it by the first of December ensuing, and to raise $600 therefor, and chose a building committee to superintend the expenditure. The clerk of the district certified the vote to raise the $600 to the assessors of the town; and, to prevent its being collected and paid out, ten taxable inhabitants of the district brought the process now before us, claiming, that, under these circumstances, the district had no legal right to raise money by taxation to build a school-house on that lot, and that if collected and paid out for that purpose, it would be devoted to an illegal purpose, within the mischief intended to be prevented by R. S. of 1864, c. 239. A temporary injunction was ordered, and the question is, shall it be made perpetual?

. If it is material, and parol evidence is admissible to prove it,

it may be considered as proved, that on April 25, 1868, a claim of appeal from the second location upon the old lot, made by the district, April 8, 1868, was presented to the selectmen.   The record shows that for some unexplained reason, the selectmen delayed action upon the appeal, but that on the 9th of September, 1868, they again unanimously decided in favor of the location voted for by the minority of the district, and certified the location accordingly to the clerk of the district.   On the part of the respondent, there is testimony tending to show that the last decision of the selectmen was not made until after the school-house on the old lot was completed; and there is record evidence offered by them to show that the clerk of the district (who acted with the majority), did not record the warrant and return for the meeting of March 28, 1867, until compelled to do so by a peremptory mandamus from this court ordered at the December term, 1869, upon a petition entered by some of the petitioners in this case at the December term, 1868; and that the majority of the district, after service of the temporary injunction in this case, still proceeded, at a meeting held October 3, 1868, to accept the school-house which they had caused to be erected on the lot where the old one stood.

This respondent has never filed any answer or plea in this case, but the parties interested, intervening in his name, resist any order making the injunction perpetual on the following grounds:

1. Because, they say, the temporary injunction ordered in vacation (Sept. 16, 1868) ceased to be operative, inasmuch as there was no motion to make it permanent before the end of the next term, by virtue of R. S. of 1857, c. 77, § 10.   But the docket entries show, that at every term, up to and including the August term, 1869, there was a special entry, that the injunction should be continued to the end of the next term, and the time of taking testimony was extended to same time ; and that, thereafterwards, the entry was at each term ' continued as before,' until the last April term, when the case was marked ' Law on statement of facts to be agreed upon.'   Apparently, by consent of counsel, the report of evidence before us was substituted for the statement of

facts. It is common practice in these cases to continue the temporary injunction from term to term until the case is ready for a final hearing, unless it is sooner dissolved on motion; and this is not in contravention of the statute cited; and we think that after the docket has once exhibited this entry, the entry of 'continued as before' (which is the clerk's compendious method of stating that the case goes forward under like orders and stipulations as at the previous term) will have the same effect.

2. It is argued, that because the general power to build school-houses and to raise money for that purpose is given by statute to school districts, it follows that this money was not proposed to be raised for an illegal purpose, and, therefore, this process cannot be maintained, and the case of *Johnson* v. *Thorndike*, 56 Maine, 37, is cited. That was a correct and wholesome decision, and if the case fell within the principle there enunciated, we should be spared the trouble of further examination.

But when an appeal has been taken from the action of a school district in selecting a site for their school-house, and another lot has been designated by the municipal officers of the town, in pursuance of the power conferred upon them by the statute, the district no longer has the legal right to determine where the school-house shall be located by anything short of a two-thirds vote, or to raise money for the erection of a school-house upon any other lot, than the one thus designated by the appellate tribunal; and money raised or paid for the erection of a school-house upon any other lot, must be considered as raised and paid for an illegal purpose; for the statute is express, that, when the decision of the municipal officers shall have been recorded, 'the district shall proceed to erect or remove the school-house, as if determined by a sufficient majority of the voters present at said meeting.' Until the location thus designated has been changed by the verdict of a jury, or by the removal of the objections entertained by the minority in the district, it is not competent for them to evade the duty thus imposed, or to raise money for the erection of a school-house upon a lot not designated by 'a sufficient majority of the voters present' at the

meeting.   Unless the general power of a district, to determine the
location of its school-house and to raise and expend money for the
erection thereof, is thus limited, the provisions respecting appeals
are completely nullified, for there would be no power to restrain a
bare majority of the district from doing as this one has done.   In so
doing the district was not ' within its legitimate sphere of action,'
and herein there is an essential difference between this case and
that of *Johnson* v. *Thorndike.*   The district had no legal right, un-
der the circumstances then existing, to raise money by taxation to
build a school-house on the lot where they did build it.   It is not
a question of expediency merely, as to the raising of money for
that purpose, but one of legal right purely.   Has any majority, less
than two-thirds of a school district, the power under our statutes
to locate a school-house, and raise money to build it, on a lot to ·
which more than one-third of the voters present and voting object,
and against which the appellate tribunal, created by the statute,
have filed their decision ?

The answer must be in the negative.

3.  But it is suggested, that until after the reception of parol evi-
dence of the application to the agent, and the ordering of the
mandamus to the clerk of the district, there was no record evi-
dence that the meeting of March 28, 1867, was a legal meeting,
and, therefore, the appeal from its decision, and the decision of the
municipal officers in favor of the location, voted for by the minori-
ty, were invalid.   Not so.   If the fact of the application and sub-
sequent legal proceedings existed, and the meeting was actually
regularly called and notified, its proceedings were valid.   The
clerk's dereliction and the failure to record the application and
warrant, might make the proof more difficult, but it did not invali-
date the doings of the meeting.   Certainly as among themselves the
voters of the district must be held cognizant of the facts.   That
parol evidence is admissible to supply the deficiency, was express-
ly decided in *Soper* v. *Livermore,* 28 Maine, 202.   It is not in the
power of the clerk of a school district to destroy the effect of the
action of his district, by failing or refusing to record the proper pa- ,

Marble *v.* McKenney.

pers to show that a meeting was regularly called and notified, so long as clear proof of those facts can be made *aliunde.*

4. Again it is claimed that the record does not now show that the meeting of March 28, 1867, was a legal meeting, because it is not directly stated, in the return of the warrant, that the meeting-house and Crosby Reed's shop, the two public and conspicuous places where the copies of the warrant and notice were posted, were within the district. And again we ask, what was the fact? If the places where the warrant and notice were posted are within the district, and the voters had, in point of fact, the precise notice which the statute requires, there would seem to be little wisdom or propriety in overturning the doings of the meeting on account of such an omission in the record. And other records in the case (among them the return upon the warrant for the meeting of April 8, 1868, at which the district voted to raise the money) show, that those places were within the district, and were the usual places to post notifications of district meetings when there was no school-house.

We see no good reason why this injunction, which has been so long continued, should not be made perpetual.

But as there seems to have been no cause for the long delay in bringing this matter to a hearing, we think the plaintiffs should tax no costs after December term, 1869, except for copies of the case, and the clerk's fee for entry upon the law docket, and certificate of decision.

Decree accordingly. *Injunction made perpetual.*

APPLETON, C. J.; KENT, WALTON, DICKERSON, and DANFORTH, JJ., concurred.