GRAFTON.

---

BLAKE & a. *v.* ORFORD.

STICKNEY & a. *v.* ORFORD.

| 64 | 299 |
| 67 | 170 |

The vote of a school-district to annex to it inhabitants of an adjoining district, at a meeting the warrant for which was not posted at least fourteen days before, is invalid.

Upon proof of an erroneous return upon a warrant for a school-district meeting, the court may order the record amended according to the fact.

A school-district is bound by the location of a school-house made, upon appeal, by the county commissioners.

A tax assessed upon the vote of a school-district for the location of a school-house, on a lot other than the one lawfully designated by the county commissioners, on appeal, is not legal, and will be abated on petition of the tax-payers of the district.

APPEALS from the refusal of the selectmen of Orford to abate a tax assessed to each of the plaintiffs in school-district No. 6, for the purpose of building a school-house. Facts found by the court. The appeals were resisted by other tax-payers in the district.

*Shirley & Stone* and *Chapman & Lang*, for the plaintiffs.

*Bingham, Mitchells & Batchellor* and *J. H. Watson* (of Vermont), for the defendants.

ALLEN, J. In *Blake v. Orford*, one ground upon which the plaintiffs claim to have their taxes abated is, that by the concurrent votes of district No. 6 in Orford and district No. 4 in Piermont, taken in March, 1881, the farm of the plaintiffs became a part of the latter district.

The record of the meeting of the Piermont district at which the vote was taken shows that the warrant was posted more than fourteen days prior to the meeting, but the court found that it was in fact posted only twelve before the meeting, and amended the record accordingly. The question whether the court had the power to make this amendment is decisively settled in the affirmative by the authorities,—*Bishop* v. *Cone*, 3 N. H. 513, *Cardigan* v. *Page*, 6 N. H. 182, 190, *Gibson* v. *Bailey*, 9 N. H. 168, *Whittier v. Varney*, 10 N. H. 291, *Bean* v. *Thompson*, 19 N. H. 294, *Cass* v. *Bellows*, 31 N. H. 501, 511, *Jaquith* v. *Putney*, 48 N. H. 138, *Taft* v. *Barrett*, 58 N. H. 447, and cases cited. As against the plaintiffs, the town has no vested rights, if, in a case of this character, the question is material. *Sawyer* v. *Railroad*, 62 N. H. —. If district No. 6 in Orford is affected by the amendment, the fact that the affidavit upon the back of the warrant was not signed by the affiant was sufficient to put any one interested upon inquiry, and district No. 6 must be taken to have had notice of all facts which by inquiry it could have learned.

The notice required by law not having been given, the action of the meeting was invalid: the plaintiffs' land remained as part of district No. 6, and might be taxed as such. *Brewster* v. *Hyde*, 7 N. H. 206; *Bank* v. *Kimball*, 20 N. H. 107; *Osgood* v. *Blake*, 21 N. H. 551; *Giles* v. *School-District*, 31 N. H. 304. The plaintiffs are not entitled to an abatement of taxes upon this ground.

Another ground upon which the plaintiffs seek an abatement is, that the taxes were assessed upon illegal votes of school-district No. 6 in Orford. At an adjourned meeting of the district, April 7, 1880, it was "voted to build a new school-house and locate the same; to raise $350; to sell the old school-house; and that Capt. Brown be an agent to take the deed of the land and have it put upon record." The vote does not show where the school-house was to be located, any further than that there was an article in the warrant for the meeting " to see if the district will vote to build a new school-house, and purchase land upon which to locate the same at the corners where the highway passing the Ames house intersects with the highway from the river road to Indian pond." The minority of the voters to the number of fourteen, understanding the location was changed by the vote, and being aggrieved thereat, in accordance with the statute applied to the county commissioners to determine the location, which that board did, deciding August 11, 1880, that the best interests of the district required the school-house to be located on the old site.

September 14, 1880, in accordance with the commissioners'

decision, the district voted to rescind their action of April 7, and voted to raise fifty dollars to pay the commissioners' fees and repair the school-house. Whether a tax for the fifty dollars was ever assessed, or whether any part of it was laid out in repairing the school-house, does not appear. June 4, 1881, it was voted by the district to purchase a lot for a school-house in another place and to build a school-house there, and to raise $300 for the purpose. It was also voted to tear down the old school-house and use the materials in building the new one, and a committee was chosen to carry into effect these votes. September 22, 1881, it was formally voted by the district to discontinue the location made by the county commissioners, and to locate the school-house upon the lot designated in the vote of June 4, and to ratify and confirm the votes of the meeting held upon that day.

A school-house having been built upon the new location and burned before it was used for school purposes, at a meeting of the district January 14, 1882, it was voted to apply the insurance money due the district in payment of the expense of building the school-house that had been destroyed, and to raise $400 for building a school-house upon the same site; and the house having been erected, January 27, 1883, it was voted to raise $15 for a stove and pipe for the school-house, and $20 for fencing the lot. It was under the votes of June 4, 1881, January 14, 1882, and January 27, 1883, that the taxes complained of, amounting to $735, were assessed.

The vote of the district to build a school-house upon a different lot from that designated by the commissioners as a location was something less than a year after that location, and the vote of the district formally locating the school-house upon the different lot was a little more than a year after the commissioners' location. The question is made, whether the location by the commissioners, made in accordance with the statute, after legal notice and hearing, is binding and conclusive upon the district for a period extending beyond the time when the district attempted to locate their school-house elsewhere. By Gen. Laws, *c.* 43, *s.* 6, it is provided that "the decision of the selectmen, fence-viewers, school-committee and other committees, and town officers, shall be binding and conclusive upon all parties for the term of five years, unless an appeal shall be prosecuted therefrom in cases allowed by law. Subsequent to the enactment of this statute, which first appeared in the General Statutes of 1867, *c.* 233, *s.* 6, it was enacted in 1871 (Laws of 1871, *c.* 4, *s.* 1, G. L., *c.* 88, *ss.* 6, 7) that "if any ten or more voters of a school-district are aggrieved by the location of any school-house by the district or its committee, or by the superintending school-committee, upon proceedings before them for that purpose they may apply by petition to the county commissioners, who shall hear and determine the location thereof." No provision was made in this statute for any appeal from the commissioners,

nor was it provided in terms that their decision should be binding and conclusive upon the district for any period of time.

Ordinarily, from the nature of judgments, the decision of an appellate tribunal must have as great force, at least, as the judgment of the inferior tribunal upon the same matter would have had if no appeal had been taken. In the absence of any statute provision to the contrary, no reason appears why the judgment of the county commissioners, locating the school-house in school-district No. 6 in Orford, was not as binding and conclusive upon the district, and for as long a period of time, as the location by the district would have been if no appeal had been prosecuted. The law of 1871 was designed as a remedy for the minority against the hardship of an unjust location of the school-house by a majority of the district. The remedy by appeal would be futile unless the commissioners' decision were binding upon the district for at least some reasonable period of time. If the school-district, on an appeal from its location to a tribunal created for the purpose of correcting an erroneous or unjust location, could be permitted to disregard the judgment of that tribunal and immediately vote a new and different location, the law, intended as a remedy for error and injustice and the pacification of neighborhood quarrels, would defeat its own ends, and all proceedings under it would be idle farces, ending in increased bitterness of disputes, the disrupting of common interests, and an increase of vexatious litigation. A construction of the statute leading to such unfortunate and absurd results is evidence of a contrary legislative intention. That intention could not have been to provide a remedy, and at the same time make the procedure for obtaining it worse than useless. *Holbrook* v. *Faulkner*, 55 N. H. 311, 315, 316.

In the ascertainment of the intention of the legislature, which is the true construction of the statute, the law making final and conclusive for five years the location of a school-house by "the school-committee and other committees," when no appeal is taken, and other existing laws upon the subject, must be considered with it. An appeal from the district's location to the school-committee of the town is allowed on the application of three or more aggrieved voters of the district (G. L., *c.* 88, *s.* 4), and the decision of that officer is made conclusive for five years, unless appealed from. The legislature, in providing for an appeal to the county commissioners from the school-district, on the application of a larger number of persons, could not have intended a result less conclusive, nor binding for a less period of time. That the legislature intended and understood that the school-district would be bound by the location of the commissioners is manifest from the statute enacted the same year (Laws of 1871, *c.* 41, *s.* 1, G. L., *c.* 88, *s.* 11), providing, in case of refusal by the district to purchase or procure the land designated by the commissioners for a school-house lot, that the selectmen of the town might appraise the land. And by a previ-

ously existing statute (G. L., *c.* 88, *s.* 14), if the district refused to build a school-house upon the lot so designated, the selectmen might procure it to be built, and assess a tax upon the district for the expense. If the school-district were permitted to abrogate or discontinue a location made by the commissioners, which would be a refusal to procure the land designated, and to build a school-house upon it, they could nullify the statutes designed to compel the purchase of the land located for a lot by the commissioners and the building upon it of a school-house. *Holbrook* v. *Faulkner, supra,* 316.

After the location of the school-house by the county commissioners in August, 1880, made after legal notice and hearing, the school-district could not lawfully discontinue that location and make a different one at the time it was attempted to be done. And the assessment of a tax for purchasing the lot located elsewhere, and building school-houses upon it, cannot bind the plaintiffs. Money raised for the erection of a school-house upon a lot other than the one legally designated, upon a proper appeal from the action of the district is deemed to be raised for an illegal purpose. *Marble* v. *McKenney,* 60 Me. 332; *Gustin* v. *School-District,* 10 Gray 85; Cooley Tax. 253, 254. On this ground the plaintiffs are entitled to an abatement.

The facts in the case of *Stickney* v. *Orford* are the same as those upon which the plaintiffs in *Blake* v. *Orford* rest as their second ground; and upon the application of the same principles and authorities they are entitled to an abatement.

*Taxes abated.*

SMITH and BINGHAM, JJ., did not sit: the others concurred.