Aldrich, District Judge.
The opinion of this court, through Colt, ■circuit judge, was rendered upon the general merits involved, February *20 2,1892, and the case is reported in 5 U. S. App. 1, 48 Fed. Rep. 910, 1 C. C. A. 144, (1st Circuit) and is now before us upon a motion for rehearing, and a petition that the questions of merit be certified to the supreme court. Upon reargument of the foregoing motion, the question is raised as to the right of this court to entertain an appeal at the stage of the proceeding reached in this cause; and, in the event that jurisdiction exists, the further question is presented whether' the mandate of this court should direct a final disposition of the cause in the court below.
After considering the briefs and rearguments, we find no reason for doubting the correctness of the conclusion stated in the former opinion as to the merits, and the motion for a rehearing and the petition for certification to the supreme court are denied, and we do not feel called upon to add anything to the reasons already stated upon this branch of the case.
The questions of jurisdiction and scope of mandate, however, not having been raised on the former arguments, or considered in the opinion, seem not only to demand our attention, but that we should state our reasons at some length.
Section 7, of the act of March 8,1891, creating the circuit court of appeals, provides:
“That where, upon a hearing in equity in a district court, or in an existing circuit court, an injunction shall be granted or continued by an interlocutory order or decree, in a cause in which an appeal from a final decree may be taken under the provisions of this act to the circuit court of appeals, an appeal may be taken from such interlocutory order or decree granting or continuing such injunction to the circuit court of appeals;” and, in order that such right of appeal should be the more highly remedial in favor of the party aggrieved, it was further provided, in the same section, that “it shall take precedence in the appellate court.”[1]
Of course, in our endeavor to ascertain the meaning of this section of the statute, we must bear in mind that, prior to its enactment, an appeal from an interlocutory injunction order was unknown in the federal courts. Having in view, therefore, this rule of law and the plain language of the statute; considering also that the purpose of the lawmaker, plainly expressed, was to give a right of appeal, not conferred by the general provisions of the statute as to appeals from final decision,—it seems to us evident that it was intended to remove the restriction, and extend the right to all that class of interlocutory orders or decrees which interfere with the possession of property, or operate in restraint of a party’s business.
Since Sir William Blackstone’s day, at least, decrees and orders in equity proceedings have only been subject to one division, and have been classed, generally, either as final or interlocutory decrees or orders; and an “interlocutory decree” has been repeatedly defined as any decree made before final decision, and for the purpose of ascertaining matter *21 of law or fact preparatory to a final decree. Blackstone says, (volume 2, p. 452:) “The chancellor’s decree is either interlocutory or final;” and in Harrison’s Practice in Chancery, (volume 1, p. 622,) it is said that “a decree is either final or interlocutory.” Again, Barb. Ch. Pr. 326:
“Decrees are of two kinds,-—interlocutory and final. An interlocutory decree is properly a decree pronounced for the purpose of ascertaining matter of law or fact preparatory to a final decree.”
In Seton on Decrees, (page 1,) it is said:
“Decrees are either final or interlocutory. If the decree determined all the questions in issue between the parties, and did not adjourn any matter for further consideration, it was called a ‘final decree.’ In strictness, however* a decree was said to be ‘ interlocutory ’ until it was signed and enrolled. Dor. Horn. 183. But ordinarily it has been termed ‘ interlocutory ’ when it was pronounced for the purpose of ascertaining matter of law or of fact previously to a final decree. ”
It is quite clear that this single division of decrees into two classes, and two only, interlocutory and final, has been generally accepted by lawyers and judges in this country and England. 1 Newl. Ch. Pr. 322; Seton, Decrees, 2; Kerr, Inj. 11, 12; High, Inj. § 1694; Adams, Eq. 375; Daniell, Ch. Pr. 986; Fost. Fed. Pr. § 318; Walk. Pat. §§ 644, 649. Rob. Pat. §§ 1131, 1132; 2 Madd. Ch. 462; Kane v. Whittick, 8 Wend. 224; Jenkins v. Wild, 14 Wend. 539; Forgay v. Conrad, 6 How. 201; Barnard v. Gibson, 7 How. 650; Perkins v. Fourniquet, 14 How. 313; Beebe v. Russell, 19 How. 283; Humiston v. Stainthorp, 2 Wall. 106; Railroad Co. v. Soutter, 2 Wall. 510, 521; Worden v. Searls, 121 U. S. 14, 7 Sup. Ct. Rep. 814; Brewing Co. v. Gottfried, 128 U. S. 158, 163, 9 Sup. Ct. Rep. 83; McCormick v. Grahams Adm’r, 129 U. S. 1, 2, 9 Sup. Ct. Rep. 213; Hurlbut v. Schillinger, 130 U. S. 456, 458, 9 Sup. Ct. Rep. 584; Collins Co. v. Coes, 130 U. S. 56, 64, 9 Sup. Ct. Rep. 514; Comely v. Marckwald, 131 U. S. 159, 160, 9 Sup. Ct. Rep. 744; Iron Co. v. Martin, 132 U. S. 91, 10 Sup. Ct. Rep. 32; Lodge v. Twell, 135 U. S. 232, 10 Sup. Ct. Rep. 745; St. Germain v. Brunswick, 135 U. S. 227, 228,10 Sup. Ct. Rep. 822; Yale Lock Manuf’g Co. v. Berkshire Nat. Bank, 135 U. S. 342, 344,10 Sup. Ct. Rep. 884; Magowan v. Packing Co., 141 U. S. 333, 337, 12 Sup. Ct. Rep. 71; McCreary v. Canal Co., 141 U. S. 459, 460, 12 Sup. Ct. Rep. 40; Saddle Co. v. Smith, 38 Fed. Rep. 414, 416; Potter v. Mack, 3 Fish. Pat. Cas. 428; McVickar v. Wolcott, 4 Johns. 510; Bennett v. Hetherington, 41 Iowa, 142; Morgan v. Rose, 22 N. J. Eq. 583, 593.
It will be observed, from an examination of the cases in the supreme court of the United States, that a decree in patent cases, declaring the patent in question valid, and that it has been infringed, and for an injunction.and an accounting, has uniformly been referred to as an interlocutory decree, and the cases are numerous, like Barnard v. Gibson, Forgay v. Conrad, Humiston v. Stainthorp, Railroad Co. v. Soutter, Beebe v. Russell, and Iron Co. v. Martin, supra, where, upon an appeal from a decree determining the general property right, granting an injunction, *22 and an order for an accounting before a master, it has been held that the'decree was not final or appealable.
It is true, that the cases in the supreme court are based upon a different statute, and in unmistakable language deny the right of appeal from interlocutory decrees. But they are for that reason none the less significant, as showing what has been understood as the line between interlocutory and final decrees. We must assume that congress used the-term, “interlocutory order or decree,” in this connection, in its common and. well-understood sense, and as intending the line of distinction accepted and interpreted by the federal courts; and it follows that all injunction-orders and decrees which were interlocutory, and not final, within the-meaning of the old statute, and for that reason not appealable, are interlocutory under the new statute, and therefore, by the same logic and. upon the same reasoning, are appealable.
We think the term “interlocutory order or decree” was used in its-broadest sense, and that the purpose of congress was to confer the right, of appeal from any decree or order granting an injunction, at any stage of the proceeding, whether technically preliminary, interlocutory, or final.
As already said, we think the term was used in its broadest sense, and, in our opinion, full scope should be given to this provision of the-statute, to the end that any party aggrieved by any order or decree granting an injunction, at any stage of the proceedings, may have a speedy remedy by appeal. It is plain that the policy intended to be emphasized, by this statutory exception to the general provision of the statute and the rule of law, limiting the right of appeal to final decision, is this:: that, as injunction orders deprive parties of the possession and control-of property and business, and, in case of error, work irreparable mischief and great injustice, the party upon whom the order operates should have an early opportunity to have the re'cord examined by the appellate-court, and, if error is discovered, to have it corrected without the delay necessarily incident to litigation in its various stages before reaching; final judgment.
As the statute in question undertakes to introduce a new feature in federal procedure, by conferring the right of appeal from certain orders- and decrees before final decision, we have approached a consideration of its scope and effect with caution; and, in view of the doubt which always comes from entering new fields, it is very gratifying to learn that, the circuit court of appeals in the fifth circuit has, in a similar case,, adopted the same construction in a forcible opinion recently rendered by Pardee, circuit judge, in Jones Co. v. Munger, etc., Co., reported 50 Fed. Rep. 785, 1 C. C. A. 668.
The remaining question, however, is more troublesome, especially in-view of the conclusion reached by the same court, in the same case, that, the mandate to the court below should go to the injunction order merely. Although the report of the case fails to show how fully the question was. considered upon argument, and the opinion presents no discussion, thereof, we have given due consideration to its weight as an authority y *23 but still feel bound to announce a different conclusion upon the same question.
At the outset, we must notice that there are many instances where cases of this character have been before the supreme court, upon a full record, in which complete relief has not been granted. But it must be observed that the failure to afford relief resulted from the limitation in the older statute, which conferred the right of appeal from final decision only,—the court, under such statute, having no appellate jurisdiction to review and furnish either partial or full relief until after final decision. The'failure to make final disposition did not result from a lack of power in a court having appellate jurisdiction to afford complete relief, but from a total lack of jurisdiction, at such a stage of the proceeding, to entertain the appeal, or to afford any relief whatever. The former decisions and practice in the federal courts, therefore, by reason of this distinction, have no force whatever upon the question whether a court having statutory appellate jurisdiction to review at interlocutory stages, and having the complete record of a full hearing upon the general merits, may proceed to correct the fundamental error, and finally dispose of the case in the manner in which it should have been disposed of in the court below.
No practice having been adopted by the supreme court upon this subject, for the reason stated, that heretofore the statutory right of appeal did not exist, we get no aid from the reported cases in that court. We must assume that congress, in furnishing equitable remedy by appeal, had reference to the equity system as understood and practiced in England, and as adopted and applied to our own institutions; and, in determining the power and the duty which result from this legislation, we must look to the English system, usage, and practice, and to the decisions of our state courts, where a similar right of appeal from such decrees has been conferred by statute. It is, of course, well understood that a court of equity is to decide on the law and fact, (Le Guen v. Gouverneur, 1 Johns. Cas. 500, 506;) and that an appeal in equity is an appeal upon the law and fact involved in the cause, (Adams, Eq. 375;) and that, “in absence of any restrictive clauses, every appellate tribunal is clothed with all the powers of the tribunal appealed from, and is bound to exercise them upon the same principles,” (Briggs’ Petition, 29 N. H. 553;) and “ordinarily, from the nature of judgments, the decision of an appellate tribunal must have as great force, at least, as the judgment of the inferior tribunal upon the same matter would have had if no appeal had been taken,” (Blake v. Orford, 64 N. H. 302,10 Atl. Rep. 117.)
Unquestionably the circuit court upon the hearing therein might have found the facts against the complainant and dismissed the bill, and the question presented is whether this court, having an appeal before it involving the same record and the same facts, may, if error is found upon the general question of right, proceed to do what the court below should have done; or shall this court, although it has examined the record, and determined the right under the patent the other way, simply dissolve the *24 injunction, permit the accounting to go on, and, after the useless expense and annoyance incident to such an investigation, upon re-examition of the same record, by the same court,' put in execution the right which it had necessarily determined in the appeal theretofore considered? In oúr view, the accounting could in no way aid the final execution of the right already ascertained by this court, and under such circumstances would be worse than idle; and a rule which would permit such circuity and circumlocution is unnecessary, and would not be useful to either the parties or the court. Now, this case must be distinguished from the class of cases where the injunction is preliminary, and granted upon the bill, or where there is only a partial hearing upon the merits, or where the record is incomplete, or evidence is excluded which should have been considered. We are not called upon to decide as to the scope of the mandate under such circumstances, but it is probable that no one would contend that, as an invariable rule, it should go to a final disposition of the cause upon its merits. Deas v. Thorne, 3 Johns. 543; Huntington v. Nicoll, Id. 566;
It is quite probable, indeed quite clear, that a distinction would be made between injunctions granted preliminarily as a matter of discretion, and a decree for an injunction granted upon the final determination of a particular right; and the general rule that an appellate court interferes reluctantly with injunctions granted in limine as a matter of discretion should not, in our view, apply to an appeal under the statute from an interlocutory decree for a perpetual injunction based upon a final determination of the substantial property right in a patent cause. In the case under consideration, the hearing in the circuit court upon the merits, as to the validity and the infringement of the patent, was full and complete, and the general property right was determined, so far as it could be done by that court; and the perpetual injunction, the order to áccount, and the appointment of the special master were based upon such determination of the property right. The record before us is complete. Everything is here for our consideration which was before the court below. We must go to the full merits, as shown by the record, in order to determine whether the interlocutory decree fora perpetual injunction is founded in error, and, if we determine the property right adversely to the complainant, the injunction should be dissolved; and no sufficient reason has been suggested why the accounting—to which the complainant is not entitled, and which would be an invasion of a right, and therefore inequitable and improper, under our view of the case—should proceed.
It is not necessary for purposes of analogy to enlarge upon the well-understood fundamental truth expressed in the constitutions, statutes, and decisions of the various states, that the system of common law and equity jurisprudence of England prevail in this country, so far as the same are not repugnant to our institutions, for the reason that rule 90 of the supreme court, (adopted by this court, rule 8,) regulating the practice of the courts of equity of the United States, provides, in effect, that, in the absence of an express rule or decision, the practice shall be *25 regulated by the practice of the high court of chancery in England, so ■far as the same may be reasonably applied, not as positive rules, but as furnishing just analogies. We do not refer to this as furnishing an absolute rule for the determination of rights, but as indicating a recognition of the system of practice ordinarily controlling equity procedure in the federal courts. It may still further be observed that, as early as 1818, the supreme court in determining a question of procedure, in Robinson v. Campbell, 3 Wheat., said, (page 222:)
“The court, therefore, think that, to effectuate the purposes of the legislature, the remedies in the courts of the United States are to be, at common law or in equity, * * * according to the principles of common law and equity as distinguished and defined in that country from which we derive our knowledge of those principles.”
And in 1851, in Pennsylvania v. Bridge Co., 13 How. 518, 563, it is said:
“The rules of the high court of chancery of England have been adopted by the courts of the United States. * * * The usages of the high court of chancery in England, whenever the jurisdiction is exercised, govern the proceedings. This may be said to be the common law of chancery, and since the organization of the government it has been observed.”
See, also, Rev. St. U. S. § 913; Vattier v. Hinde, 7 Pet. 252, 274; Bein v. Heath, 12 How. 168, 178. And to the same effect in the state courts. Newark & N. Y. R. Co. v. Mayor, etc., 23 N. J. Eq. 515, 517; State v. Rollins, 8 N. H. 550; Pierce v. State, 13 N. H. 536; Connecticut River Lumber Co. v. Olcott Falls Co., 65 N. H. 290, 21 Atl. Rep. 1090; Le Guen v. Gouverneur, 1 Johns. Cas. 436, 508.
In the case last referred to Chancellor Kent says, (page 508:)
“Our system of jurisprudence is borrowed from the English system, and in all its great outlines, as well as in its subordinate parts, is happily modeled after that admirable monument of the experience and wisdom of ages.”
See, also, “Note by the Court” in Thomson v. Wooster, 114 U. S. 112, 5 Sup. Ct. Rep. 788.
Of course, it is understood that this adoption is subject to the limitation that it must be in keeping with the principles of our institutions, and subject to the acts of congress, limiting or enlarging the same, as, for instance, the old statute limiting the right of appeal, contrary to the English system, to appeals from final decrees. But now that this limitation is removed, and the right of appeal from interlocutory injunction orders and decrees has been created by statute as in England, without any restriction as to the manner in which equity and justice shall be administered thereunder, it only remains to inquire what the chancery practice of England has been in this respect, and whether the same may reasonably be applied as consistent with our institutions, and as a matter of convenience and safety in equity procedure in this jurisdiction.
In England, any person aggrieved by a decree or order of the court of chancery is entitled as a matter of right to appeal to the house of lords, (2 Daniell, Ch. Pr., 4th Ed., 1471;) and, in practice, this right extends to interlocutory decrees, (Id. 1492; Forgay v. Conrad, 6 How. *26 201, 205;) and later (14 & 15 Vict. c. 68, § 10) this right was extended! to decisions, decrees, and orders of the court of appeals. Mr. Daniell, speaking of the right of appeal from interlocutory decrees, says, (page1492, Id.:)
“Appeals from courts of equity by petition differ from appeals by writ of error from the judgments of the courts of law, which will only lie where the judgment is final. The reason for this distinction is stated to be that courts of equity often decide the merits of a case in intermediate orders, and the permitting of an appeal in the early stage of the proceedings frequently saves-the expense of further prosecuting the suit. ”
See, also, 2 Smith, Ch. Pr. (2d Ed.) p. 40; McNeill v. Cahill, 2 Bligh,. (N. S.) 316.
Indeed, it seems to have been the practice, from an early period, in the house of lords, to direct a final disposition of causes before it with a full record, upon appeal from interlocutory orders and decrees based upon a hearing upon the merits below, whenever it was found that there was no equity in the complainant’s cause; and the action of the appellate court in this respect was not confined to causes in which it concurred with the chancellor from whom the appeal was taken, but extended to-instances where the findings were reversed upon an examination of the record. Bouchier v. Taylor, 4 Brown, Parl. Cas. 708, (1776;) Governors, etc.,v. Swan, 5 Brown, Parl. Cas. 429, (1760;) Ellis v. Segrave, 7 Brown, Parl. Cas. 331; White v. Lightburne, 4 Brown, Parl. Cas. 181; Scribble-hill v. Brett, Id. 144; McCan v. O’Farall, 8 Clark & F. 30; Rous v. Barber, 4 Brown, Parl. Cas. 660. The case of McCan v. O'Ferrall, supra, was before the house of lords in 1840, and, although in that case the matters involved were not finally disposed of by decree, the lord chancellor states the rule, with the reasons for it, (page 66,) saying:
“Now, my lords, the usual course of proceeding in this house, in arranging the minutes of the decree, has been to declare the principles upon which the decree is to be founded. * * * That, however, has been found to-lead, sometimes, to repetition of appeals. * * * Where, therefore, it is possible, I think it more expedient, and more calculated to save expense to the parties, that this house, in making its order, should frame the decree in such a manner as to prevent the necessity of any further reference to the court below.”
This practice is by no means new in the equity jurisprudence of our own country. In a very early case'in New York, involving interests of great magnitude,—Le Guen v. Gouverneur, 1 Johns. Cas. 436, (1800,)— and at a period when Chancellor Kent was a member of the court of errors, the question was under consideration as to the measure of relief to be afforded upon an appeal from an interlocutory order directing the trial of an issue at law. The appellate court determined that- the complainant had no equity, and after much argument and full consideration, which involved a review of the English cases and the practice of the house of lords, proceeded to final judgment, and dismissed the bill. The question was one of new impression in the American courts, and three judges rendered opinions in the cause; Kent, J., in the course of a luminous opinion, (page 508,) saying:
*27 “It is the settled rule of the house of lords in England, upon appeals, always to give such a decree as the court below ought to have given. This is-the great and leading maxim in their system of appellate jurisprudence, and instances are, accordingly, very frequent, in which the lords, on appeals from interlocutory orders in chancery, have reversed the order, and decided fully on the merits.”
Again he says, (page 508:)
“Their power on appeals is exercised with great latitude in dismissing the-bill, or modeling the relief, or granting it conditionally, as may best answer the ends of justice and the exigencies of the case. ”
Again, (page 509:)
“Possessing the authority to decide finally, I think we ought to exercise it in this instance. * * * All the proofs are before us. * * * The cause is as ripe here as it was in the court below, for ultimate decision;, and, if we are persuaded in our own minds that the facts before us can never support the allegations of fraud, we ought to say so, and put an end to the-contention. ”
And in the same line and to the same effect Radcliff, J., says, (page-499:)
“I have also no doubt that this court may proceed further, if it appear that the merits are fully in its possession, and determine finally between the parties. That such is the power, and frequently the practice, of the house of lords in England, is evident from the cases which have been cited. * * * On similar appeals, they affirm, reverse, or alter the order for an issue, and sometimes proceed to dismiss the bill, or otherwise decree on the merits. The power of this court is the same, in this respect. I can see nothing in our constitution or laws to restrain it. * * * In this case, the propriety of making a final decree arises out of the appeal itself, which brings before us-the whole merits of the cause.”
Again, (page 500:)
“The power appears to me essential to a court of appeal in the last resort, and I have no doubt that it is vested here. ”
The authority last referred to is of unusual value, both by reason of its involving the first American discussion of the question, and from the-great learning of the court rendering the opinion, and this, together with the fact that a full report of the case (Johns. Gas. 1800) is not easily accessible, would seem to justify the somewhat extensive quotations. Five-years later the same court, through Spencer, J., in Bush v. Livingston, 2 Gaines, Cas. 66, in making a final decision of the cause, said, (page 85 :)-
“ There remains only one point to be considered; that is, whether the court will finally decide the cause. In the case of Gfouverneur & Kemble v. Le Guen, this court, on an appeal from the order of the chancellor, directing an issue, finally decided the cause, and directed the complainants’ bill to be dismissed. It did so on precedents from the proceedings of the house of Idrds in England, on appeals from chancery, and because the whole merits of the ease were before the court. When it is considered that there can be no further proofs in the cause, that the whole merits have been discussed and reviewed, that it will save litigation and expense, I am myself contented to be bound by the precedent which has been made.” See, also, Beebe v. Bank, 1 Johns. 529.
*28 In 1822 the doctrine of Le Guen v. Gouverneur was referred to with apparent approval in Dale v. Roosevelt, 6 Johns. Ch. 255, 257, and, so far as known, the practice obtained in New York until the adoption of the Code; and the fact that a different practice has prevailed since the abridgment of the right of appeal, as said in Newark & N. Y. R. Co. v. Mayor, etc., 23 N. J. Eq. 519, is aside' from the purpose. In Terhune v. Colton, 12 N. J. Eq. 312, although the precise question under consideration was not involved, Elmer, J., (page 318,) speaks of an interlocutory order which involved the merits of the case; and in 1872 the precise questions which we are now considering came before the New Jersey court of errors and appeals in the case of Newark & N. Y. R. Co. v. Mayor, etc., 23 N. J. Eq. 515.
The New Jersey statute provided that “all persons aggrieved by any order or decree of the court of chancery may appeal from the same or any part thereof;” and the case last referred to involved both the right of appeal from an interlocutory order, and the power of the court to conclude the cause upon its merits. These questions received careful consideration by the chief justice, who announced the opinion of the court, not only sustaining the right of appeal, but, after reviewing the English and New York cases, said, (page 521:) “In view of these authorities, I can entertain no uncertain opinion with regard to the power of this court to deal with the present case on its merits.” Again: “It seems to me that this court should pass upon the question as 'to the equity of the bill,” etc.
Under the authorities, and the equity practice to which we have referred, and upon principle, it seems to us clear that, while the appellate court is not bound by an inflexible rule so to do, it may in its discretion, and should, when equity so requires, make full direction as to the manner in which the cause shall be disposed of below. No special or peculiar conditions have been suggested as existing in this case, as a reason why the mandate should not be as broad as the decree in the circuit court; but, on the contrary, as it seems to us, there are strong equitable reasons why an accounting in a patent case, which is incident to and based upon a finding and a decree which upon the record appears to the appellate court to be erroneous, should not proceed; and it is our conclusion, as the full record is before us, upon appeal from an injunction granted by an interlocutory decree, after a full hearing, and a finding which undertakes to finally dispose of the property right involved, that we should direct a final disposition of the cause in accordance with the view which we hold upon the substantial merits. It therefore follows that the findings of the circuit court are reversed, the decree for an injunction and for an accounting is vacated, and it is ordered that a mandate issue accordingly, and with further direction that the bill be dismissed.

 c. c. a. vii.