SHINKLE, WILSON & KREIS CO. et al. v. LOUISVILLE & N. R. CO. et al.

(Circuit Court, S. D. Ohio, W. D.    July 30, 1894.)

INJUNCTION—FAILURE TO OBEY ORDERS OF INTERSTATE COMMISSION.

A preliminary injunction to compel a carrier to obey an order of the interstate commerce commission in reference to freight rates on merchandise and manufactures should be denied where the answer denies that the rates defendant charges and which were passed on by the commission were unreasonable or unjust.

Shinkle, Wilson & Kreis Co. and others obtained a preliminary injunction against the Louisville & Nashville Railroad Company, without notice to it, compelling it to obey an order of the interstate commerce commission. Subsequent to the granting of the order defendant filed an answer putting in issue the material facts alleged in the petition. Defendant moves to discharge the order. Order dissolved.

Matthew Kittrell, for complainants.

Ed. Baxter, for defendants.

LURTON, Circuit Judge. The only matter now for consideration is as to the continuance of a restraining order granted without notice to the Louisville & Nashville Railroad Company, upon a petition filed by a number of manufacturers and merchants of Cincinnati, in behalf of themselves and all other shippers in like situation, to obtain such injunctions or other process as will compel the Louisville & Nashville Railroad Company to obey an order made by the interstate commerce commission in reference to freight rates on merchandise and manufactures shipped from Cincinnati to a number of junction points in Tennessee, Georgia, Alabama, and Mississippi. On complaint of the Freight Bureau of the Cincinnati chamber of commerce that certain railroad and steamship companies, associated together under the name of the "Southern Railroad & Steamship Association," were violating certain provisions of the interstate commerce act, entitled "An act to regulate commerce," approved February 4, 1887, and

the amendatory acts of March 2, 1889, and February 10, 1891, it was decided that the schedule of freight tariffs enforced between Cincinnati and certain designated points in the southeast were unreasonable and unjust, and operated to discriminate against Cincinnati, and in favor of New York and other eastern cities having commercial relations with the same territory. The said commission thereupon fixed what it declared to be a maximum rate upon those classes of freights embracing merchandise and manufactures between Cincinnati and Knoxville, in Tennessee, Atlanta and Rome, in Georgia, Birmingham, Anniston, and Selma, in Alabama, and Meridian, in Mississippi, and required that the Louisville & Nashville Railroad Company should desist from charging or collecting for or upon freights from Cincinnati to said other places any higher rates than such as had been determined by it to be just and reasonable. The petition alleged that the railroad company, pending the proceeding before said commission, voluntarily reduced its rates to the points named to a rate below the maximum allowed by the said commission. It charged that said company now proposed to restore the rates held to be unjust and unreasonable, and had given notice of such restoration of rates, to take effect August 1, 1894. The petition seeks a temporary injunction, pending a hearing, and a perpetual injunction, on final hearing, against the imposition of any rate in excess of those fixed by said commission as reasonable.

The petition was presented to the Honorable William H. Taft, U. S. Circuit Judge, who, upon an ex parte hearing, granted a restraining order in accordance with the prayer of the petition. That order was as follows:

"And the court further orders that in the meantime, and until the further order of court, as hereinafter further provided, upon and after the first day of August, 1894, or at any other time, the said defendant the Louisville & Nashville Railroad Company do not proceed to charge or collect for or upon freights from Cincinnati to said other places specified above at any higher rates than as in the words and figures above set forth; and that during the same time it do not proceed to charge or collect for freights from Cincinnati to places contiguous to said other places named above at any higher rates than such as are in keeping with, and relatively proportionate to, specified rates; and that a temporary restraining order be issued and served forthwith upon the said defendant the Louisville & Nashville Railroad Company to said effect. This order, temporarily restraining said defendant, however, is made with the reservation of the right on the part of said defendant to apply by motion for its dissolution, upon two full days' notice to counsel for the plaintiff at Cincinnati, to the Honorable John W. Barr, district judge designated to sit in this district, in court, or in chambers at Louisville, Kentucky, or to the Honorable Horace H. Lurton, circuit judge, in court, or in chambers at Nashville, Tennessee, and upon the condition of the stipulation of counsel for the plaintiffs, now made and ordered to be filed herein, agreeing to the hearing of such motion for dissolution upon the notice aforesaid. This order is made simply on prima facie case made by decision of commission, and is without prejudice to a full consideration of the questions of law and fact on motion to dissolve."

The Lousiville & Nashville Railroad Company, subsequent to the granting of the above order, filed an answer putting in issue many of the material facts charged in the petition, and denying, in the most emphatic terms, that the rates of freight from Cincinnati to

the points named, declared by the commission unjust and illegal, and to operate as a discrimination against Cincinnati and in favor of eastern points, are unjust or unreasonable, and that the decision to that effect, upon the facts submitted to the interstate commerce commission, was erroneous and unjustified. It explains that the reduction made in rates was made in an emergency, for the purpose of preventing secret injurious contracts made by railroads and in violation of agreements between it and said other roads, and of the interstate commerce acts; that the reduced rate was in force but a few days when the notice complained of was given, that the rates in force for years would be restored August 1. They deny in the most positive terms that the schedule of rates which they now propose to restore to the same figure at which they were at the time of the hearing before the interstate commerce commission is unjust or illegal. In pursuance of the terms of the restraining order above set out, counsel for the defendant railway have given notice, and have moved to discharge said order. Upon the questions thus presented, full and elaborate arguments have been made by counsel representing both the petitioners and the railway company.

The order made by Judge Taft was granted without notice. The right to a full hearing is so pointedly recognized in the order made that I feel no embarrassment in now passing upon the question as if an original application for a preliminary injunction. Such an injunction never issues as of right, but rests in the sound discretion of the court. In order to obtain it, the plaintiff should show either that his right is very clear, or that the injunction will operate with but little injury to the defendant, if granted, and that, if refused, the injury to himself will be very great. Fost. Fed. Pr. § 233, and cases cited; 1 High, Inj. § 7; 2 High, Inj. §§ 938, 939, 1026. Where the inconvenience to result is equally divided, or the preponderance is in favor of the defendant, it will be refused. Flippin v. Knaffle, 2 Coop. Ch. 238; Owen v. Brien, Id. 295. Neither is a plaintiff entitled to a preliminary injunction where his rights depend upon unsettled and disputable questions of law. Jersey City Gaslight Co. v. Consumers' Gas Co., 40 N. J. Eq. 431, 2 Atl. 922; National Docks R. Co. v. Central R. Co., 32 N. J. Eq. 755; 1 High, Inj. § 13; 2 High, Inj. § 1026; Citizens' Coach Co. v. Camden Horse-Railroad Co., 29 N. J. Eq. 299. I am of opinion that this is not a proper case for a preliminary injunction.

1. The right of the petitioners is yet to be established. The opinion of the interstate commerce commission has not the effect of a judicial determination. If a carrier refuses to acquiesce in an order made by that commission, it can only be coerced by a proceeding in a United States court. The mode and right of procedure in this court is by petition filed by the commission, or any one interested, setting out the disobedience complained of. Power is then given the court to hear and determine the matter, "in such manner as to do justice in the premises." The act then provides that, on the hearing of the controversy thus submitted,

"the findings of fact in the report of said commission shall be prima facie evidence of the matters therein stated." If it shall then appear, on all the evidence heard and submitted, that the order of the commission was lawful and reasonable, and that it has been violated, it shall be lawful for such court to issue a writ of injunction, or other proper process, to prevent further disobedience of such order. Now, it is well settled that the court is not the mere executioner of the orders of the commission. The suit in this court is an original and independent proceeding. This court is not confined to a mere examination of the matter as heard by the commission. It proceeds to hear the complaint de novo. On that hearing, the findings of fact are evidence operating to make out a prima facie case in favor of the conclusion reached as to the fact of a violation of the interstate commerce act. Kentucky & I. Bridge Co. v. Louisville & N. R. Co., 37 Fed. 613; Interstate Commerce Commission v. Atchison, T. & S. F. R. Co., 50 Fed. 295; Interstate Commerce Commission v. Lehigh Val. R. Co., 49 Fed. 177; Interstate Commerce Commission v. Baltimore & O. R. Co., 43 Fed. 43; Interstate Commerce Commission v. Cincinnati, N. O. & T. P. R. Co., 56 Fed. 926. The answer denies most distinctly that the rates about to be restored, and being the same rates passed upon by the commission, are unjust or unreasonable. It denies that those rates operated to discriminate against the commerce of Cincinnati and in favor of eastern cities. If it be assumed that, upon an application for a preliminary injunction, the report of the commission is to be regarded as making out a prima facie case of illegal rates, that effect, on such an issue, is lost when an issue is made by a sworn answer upon the principal conclusions of the report.

2. The very wide scope of territory affected by this report, and the great importance of the questions of fact and law arising thereon, demand most careful investigation. Many important and unsettled questions of law are involved, and will demand consideration. This should make a court cautious as to the granting of a preliminary injunction, the only relief finally sought being a perpetual injunction. It seems to me that section 16 of the interstate commerce act only contemplates an injunction as the final result of a hearing on pleadings and proof. Certainly, no court has yet granted such preliminary injunction. Many cases such as this have been brought, but no preliminary injunction appears to ever have been issued. In the case of Interstate Commerce Commission v. Lehigh Val. R. Co., 49 Fed. 177, a motion was made for a preliminary injunction, which was fully considered by Acheson, circuit judge, and Butler, district judge, and refused, although the injury to result from its being granted was nothing to that likely to result here.

3. The injury which petitioners will sustain if injunction is now refused, in view of the sworn denials of the answer as to special damages, would consist in being obliged to pay greater rates than defendant is authorized to demand. But the excess paid would be a simple matter of calculation, and it is not alleged that the

defendant is not financially responsible. That there are many others, not parties, equally interested, only comes to this: that the defendant may be harassed with many suits unless, in the event of an adverse decision, it voluntarily restores the excessive charge it will have received. On the other hand, if a preliminary injunction be now granted, it would likely stand until final hearing in the supreme court. In the meantime, the defendant would lose a sum stated in the sworn answer as amounting, on business originating in Cincinnati alone, of upwards of $100,000 per year. A long adherence to a lower schedule of rates would render it difficult to restore the old rates maintained, with occasional exceptions, for years. In addition, the effect of enforcing the rates from Cincinnati to the designated points would involve a readjustment from cities contiguous to Cincinnati, and having commerce in the same southern territory. The balance of inconvenience seems to be on the side of the defendant. For these reasons, it seems to me that a preliminary injunction ought not to issue, and that the restraining order should be dissolved.

I express no opinion upon any of the questions involving the merits. Any reasonable order tending to the speedy preparation and trial of this matter will be made on application. In the meantime, it is ordered that plaintiff file replication to the answer, and that the cause then stand at issue.