## BISSELL CARPET-SWEEPER CO. v. GOSHEN SWEEPER CO.

(Circuit Court of Appeals, Sixth Circuit. March 5, 1896.)

No. 404.

1. CIRCUIT COURT OF APPEALS—JURISDICTION—INTERLOCUTORY DECREE—DISSOLVING INJUNCTION.

An order so modifying an interlocutory decree for a broad perpetual injunction against infringing a patent as to permit defendant to manufacture and sell for a limited time certain infringing machines is an order dissolving pro tanto the original injunction, and is, consequently, an appealable interlocutory order or decree, within the act of February 18, 1895, amending section 7 of the act of March 3, 1891.

2. APPEAL FROM INJUNCTIONAL DECREE—EFFECT OF SUPERSEDEAS.

An appeal with supersedeas from an interlocutory decree granting a perpetual injunction against infringement of a patent on a bond conditioned to prosecute the appeal, and, on failure to make the same good, to pay costs and damages, "as well as all damages and profits resulting from" defendant's manufacture and sale of the infringing articles "after the date of the said decree," only operates to suspend the injunction pending the appeal, and is not a license to defendant to continue the manufacture and sale of the infringing articles pending the appeal.

3. CIRCUIT COURT OF APPEALS—EFFECT OF DECISIONS.

The decree and mandate of the circuit courts of appeal have precisely the same finality as the decrees and mandates of the supreme court. Whatever is before the court by virtue of the appeal, and is disposed of by it, is finally settled, and becomes the law of the case, so that the court below must carry it into execution according to the mandate, without power to modify, reverse, enlarge, or suspend it.

4. SAME—APPEAL FROM INTERLOCUTORY ORDERS AND DECREES.

It is the practice of the court that, on an appeal from an order or decree granting a preliminary injunction merely, the court will not ordinarily consider or determine the merits of the cause, but will confine itself to a consideration of the question as to whether the court below has abused its discretion. Consequently, when such an order or decree is affirmed, the court below is still at liberty to enlarge, modify, or suspend the same, as the future circumstances of the case or the ends of justice may require.

5. SAME—APPEAL FROM INTERLOCUTORY DECREE FOR PERPETUAL INJUNCTION.

Where, on appeal from interlocutory decree granting a perpetual injunction, the court necessarily examines and determines the entire merits of the cause, its power to decree is not limited to the matter of the injunction alone, but extends to the whole merits, and its decision is final and conclusive on every point actually decided. Consequently, the court below has no power to modify, in any respect, a decree which is thus affirmed, but must give it full effect in the very terms of the decree of the appellate court. Richmond v. Atwood, 2 C. C. A. 596, 52 Fed. 10, and Marden v. Manufacturing Co., 15 C. C. A. 26, 67 Fed. 809, followed. Watch Co. v. Robbins, 3 C. C. A. 103, 52 Fed. 337, overruled.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

A. C. Denison and Geo. H. Lothrop, for appellant.

Charles K. Offield and J. W. Champlin, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge. This is a second appeal in this case. The former appeal was by the Goshen Sweeper Company, and was from an interlocutory decree determining the validity of a certain patent owned by the Bissell Carpet-Sweeper Company, and finding

v.72F.no.5—35

that the Goshen Sweeper Company had infringed. The decree awarded a perpetual injunction, and referred the cause to a master for an accounting. This court, upon a full hearing, in which it was obliged to fully consider and determine both the question of the validity and meaning of the second clause of the Plumb patent, as well as the question of infringement, affirmed the decree awarding the injunction, and remanded the case to the circuit court for further proceedings. 72 Fed. 67. After this affirmance, the circuit court, upon motion of the Goshen Sweeper Company, entered an order in these words:

"The defendant in this cause having moved the court for leave to finish the manufacture of carpet sweepers now in the course of construction, and to sell the carpet sweepers already manufactured, as well as those now in process of manufacture, when completed, to others, to sell or use, after hearing counsel for the respective parties upon the motion, and having duly considered the same, it is hereby ordered: That the defendant have permission, and leave is hereby granted to defendant, to sell to others, to be sold or used, the following kinds of sweepers, embraced in the three first horizontal columns in the inventory attached to the affidavit of Thomas H. Bedell, filed in support of said motion, viz.: Now finished: 238 Rapid; 230 Select; 100 Star; 25 Reliable; 3 Banner; 78 Model; 20 Our Own; 25 Grand Republic; 9 Railroad; 22 Rapid. Also, to complete the manufacture of and to sell to others, to be sold or used, the following sweepers of the kinds here given, viz.: 1,465 Rapid; 1,252 Select; 543 Star; 363 Reliable; 210 Banner; 299 Model; 110 Our Own; 141 Grand Republic; 72 Mammoth; 21 Sovereign; 81 Michigan; 6 Railroad; 72 Our Leader; 111 Alliance. That said defendant may stencil the sweepers as demanded by the trade, all of which sweepers named contain the elements of the Plumb patent as construed by the circuit court of appeals, in an opinion handed down on December 9, 1895. That the injunction heretofore granted is hereby modified in accordance with this order. That the defendant account before the master for all sales made hereunder, in accordance with the interlocutory decree entered in this cause. That this leave shall expire six months from this date, and is granted on condition that defendant file with the clerk of this court a bond to complainant, with sureties satisfactory to this court, or to the clerk thereof, in the penal sum of five thousand dollars ($5,000), conditioned to pay the complainant all the profits and damages that may be decreed against the defendant upon final hearing in this cause for or on account of the sale or disposition of the sweepers as aforesaid."

From this decree the Bissell Carpet-Sweeper Company has been allowed an appeal.

A motion to dismiss the appeal has been entered by the appellee, which must be disallowed. The decree appealed from is one dissolving pro tanto the perpetual injunction theretofore in force, and is an appealable interlocutory order or decree, within the act of February 18, 1895, c. 96 (28 Stat. 666), which amends section 7 of the act of March 3, 1891, so as to allow appeals from interlocutory orders or decrees dissolving injunctions. The injunction in force prior to the decree in question was a broad injunction, absolutely restraining the appellee from making or selling the infringing structures. When an appeal was allowed from the decree granting the perpetual injunction, the circuit court, as it was authorized to do under section 7 of the courts of appeals act, granted an appeal with supersedeas, on a bond conditioned that the defendant should prosecute the said appeal to effect and pay all costs and damages if it failed to make said appeal good, "as well as all damages and

profits resulting from its manufacture and sale of the infringing sweepers after the date of the said decree." This only operated to stay or suspend the injunction pending the appeal. It had no effect or operation as a license to defendant. The status of the defendant was simply that of persons engaged in infringing, and not restrained by operation of the injunction. But, however this may be, so soon as the appeal had been determined adversely to the appellant, the injunction was instantly reinstated, the supersedeas having expired by its own limitation. The clear effect of the decree now complained of was to dissolve this injunction pro tanto. More than this, the decree seems to have gone so far as in terms to grant a license to the defendant to continue its infringement, by authorizing it to complete the manufacture of structures begun, and to sell to others, to be sold or used,—sweepers already complete, as well as those to be finished under the order. Before the provision for an appeal from an interlocutory order or decree granting an injunction, it was not unusual or improper to suspend the operation of an injunction awarded by a decree determining the merits, and referring the case to a master for accounting. The propriety of such a suspension was due to the fact that, while the injunction might be awarded upon a decree which was final as to the merits, yet it was not final under the rulings of the supreme court as to what constituted an appealable decree, within the terms of section 692, Rev. St. Very great hardships frequently resulted from the operation of such an injunction, due to the fact that very often a long and expensive accounting intervened between the allowance of the injunction and the rendition of the final decree from which an appeal would lie. To prevent as much as possible the severe consequences incident to the practical enforcement of interlocutory decrees affecting the merits of the controversy, though not appealable, the supreme court, at an early day, admonished trial judges as to their duty to alleviate as far as possible all such consequences, by saying:

"It is exceedingly important, therefore, that the circuit courts of the United States, in framing their interlocutory orders, and in carrying them into execution, should keep in view the difference between the right of appeal as practiced in the English chancery jurisdiction and as restricted by the act of congress, and abstain from changing unnecessarily the possession of property, or compelling the payment of money by an interlocutory order." Forgay v. Conrad, 6 How. 205.

An application to suspend the operation of such an injunction came on to be heard before Justice Swayne, when holding a circuit court, who took occasion, in granting the application, to say:

"An application is made that this final decree shall be suspended, as it regards the injunction, until the account shall be determined upon, and the decree shall be finally made upon that account, and when the defendant, for the first time, will have the right to appeal. He cannot appeal from the decree as it at present stands, because, although the decision is final as to the merits of the case, it is in form an interlocutory decree only, and the rule established by the supreme court is that an appeal can be taken only from a final decree. It has been held, in this class of cases, that a decree is not to be considered final for the purposes of an appeal until after the coming in of the master's report. I have no doubt of the power of the court to sustain

this motion. Such power is incidental, in my judgment, to equity proceedings. There is no question, in my judgment, of the power of the court to stay a judgment at law. And it is a constant practice of the state courts and the circuit courts of the United States, where the equities between the parties require it, to make such an order. If I had any doubt of it, the authority of Barnard v. Gibson, 7 How. 650, is conclusive." Potter v. Mack, Fed. Cas. No. 11,331.

If an appeal be allowed from an interlocutory order or decree granting an injunction, the injunction will continue in force pending the appeal, unless stayed by order of the court granting the appeal. The granting of a supersedeas rests in the judicial discretion of the court, and its discretion to grant or refuse a supersedeas will not be controlled by mandamus. In re Haberman Manuf'g Co., 147 U. S. 525, 13 Sup. Ct. 527, overruling Societe Anonyme v. Blount, 51 Fed. 610.

As we have seen, the circuit judge exercised his discretion, and stayed his final injunction pending appeal. But it is said that after the appeal had been determined, and the decree awarding the injunction had been affirmed, it was still within the discretion of the circuit court to suspend or modify the injunction theretofore allowed, and that the exercise of such discretion is not the subject of review. The answer to this depends upon what this court did in the exercise of its jurisdiction upon the former appeal. Whatever was before it by virtue of that appeal, and was disposed of, has been finally done, and must be regarded as settled. The circuit court is bound by such decree as the law of the case, and must carry it into execution according to the mandate. The decree of this court upon any matter within its jurisdiction can neither be modified, reversed, enlarged, nor suspended by the circuit court; nor can any other or less or greater relief be accorded than that prescribed by its decree and mandate. Any matter undecided and left open by the mandate the court below may hear and decide, and its decree in relation to such new matters can be examined here only upon a new appeal. That the decree and mandate of this court have precisely the same finality as was attached to the decrees and mandates of the supreme court, before the establishment of the circuit courts of appeals, is too obvious for elaboration. As to the finality of a decree and mandate of the supreme court, and the duty of the circuit court in respect thereof, there has never been any serious question.

The very pertinent summary of the doctrine by Justice Gray, in the very late case of Sanford Fork & Tool Co., Petitioner (decided December 23, 1895) 16 Sup. Ct. 291, is quite in point, and is as applicable to the decree and mandates of this court as to those of the court of which he was speaking. The learned justice said:

"When a case has once been decided by this court on appeal, and remanded to the circuit court, whatever was before this court, and disposed of by its decree, is considered as finally settled. The circuit court is bound by the decree as the law of the case, and must carry it into execution, according to the mandate. That court cannot vary it, or examine it for any other purpose than execution, or give any other or further relief, or review it, even for apparent error, upon any matter decided on appeal, or intermeddle with it, further than to settle so much as has been remanded. Sibbald v. U. S., 12

Pet. 488, 492; Railway Co. v. Anderson, 149 U. S. 237, 13 Sup. Ct. 843. If the circuit court mistakes or misconstrues the decrees of this court, and does not give full effect to the mandate, its action may be controlled, either upon a new appeal (if involving a sufficient amount) or by a writ of mandamus to execute the mandate of this court. Perkins v. Fourniquet, 14 How. 313, 330; In re Washington & G. R Co., 140 U. S. 91, 11 Sup. Ct. 673; Bank v. Hunter, 152 U. S. 512, 14 Sup. Ct. 675; In re City Nat. Bank of Ft. Worth, 153 U. S. 246, 14 Sup. Ct. 804. But the circuit court may consider and decide any matters left open by the mandate of this court; and its decision of such matters can be reviewed by a new appeal only. Hinckley v. Morton, 103 U. S. 764; Mason v. Mining Co. 153 U. S. 361, 14 Sup. Ct. 847; Nashua & L. R. Corp. v. Boston & L. R. Corp., 5 U. S. App. 97, 2 C. C. A. 542, and 51 Fed. 929."

But we do not understand that the applicability of this well-settled rule as the effect and binding force of appellate proceedings is controverted. The contention is, rather, that the jurisdiction of this court under an appeal from an interlocutory decree granting an injunction is limited to a mere consideration of the question as to whether or not the circuit court has abused its discretion in granting the injunction, and that the decision of this court affirming the action of the circuit court amounts to nothing more than a decision that such discretion has not been abused. Upon this assumption, it is said that the jurisdiction of the circuit court over the decree and injunction is just as complete and exclusive after such an affirmance as it was before, and that, as it might before the appeal, for reasons satisfactory, and for a better attainment of justice, modify, discharge, or suspend such injunction at any time before a final decree, so it may exercise the same power and discretion after an appeal and an affirmance. The chief error in this argument lies in the assumption that the inquiry of this court in reviewing the action of the circuit court was limited to a consideration as to whether the lower court had abused its discretion in granting the injunction. Where a preliminary injunction is allowed upon a prima facie showing, and without the determination of the merits, this court will ordinarily, on an appeal, consider only the question as to whether, on the prima facie case made, there has been an abuse of discretion. Such preliminary injunctions are ordinarily intended only to operate pendente lite, or until a hearing on the merits can be had. They are granted upon a mere summary showing upon affidavits. Their issuance is not a matter of right, and rests in the sound discretion of the judge.

"When the inconvenience to result is equally divided, or the preponderance is in favor of the defendant, it will be refused." Shinkle, Wilson & Kreis Co. v. Louisville & N. R., 62 Fed. 690-692.

This court, in Blount v. Societe Anonyme, 6 U. S. App. 335, 3 C. C. A. 455, and 53 Fed. 98, in defining the objects and functions of a preliminary injunction, said, through Judge Jackson, that:

"The object and purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined upon strictly legal proofs, and according to the course and principles of courts of equity. The prerequisites to the allowance and issuance of such injunction are that the party applying for the same must generally present a clear title, or one free from reasonable doubt, and set forth acts done or threatened by the defendant, which will seriously or

irreparably injure his rights under such title, unless restrained. The legal discretion of the judge or court in acting upon applications for provisional injunctions is largely controlled by the consideration that the injury to the moving party, arising from a refusal of the writ, is certain and great, while the damage to the party complained of, by the issuance of the injunction, is slight or inconsiderable."

To the same effect are the text writers: 1 Fost. Fed. Prac. § 233; 1 High, Inj. § 7; 2 High, Inj. §§ 938, 939, 1026.

It has therefore been the practice of this court that, when the appeal involves only an order or decree granting a preliminary injunction, this court will not consider or determine the merits of the cause, but confine itself to a consideration of the question as to whether the circuit court has abused its discretion in the allowance of the writ. Blount v. Societe Anonyme, supra; Duplex Printing-Press Co. v. Campbell Printing-Press & Manuf'g Co., 16 C. C. A. 220, 69 Fed. 250; Thompson v. Nelson (No. 366; decided by this court November 11, 1895) 18 C. C. A. 339, 71 Fed. 339.

In the Duplex Printing-Press Co. v. Campbell Printing-Press & Manuf'g Co., cited above, this court said:

"The motion for a preliminary injunction necessarily involved the exercise by him of a sound judicial discretion in granting or withholding it. By no action of his could he enable this court finally to determine all the questions between the parties to the action, because it is not within the proper province of this court to do so on an appeal from an order granting a preliminary injunction."

Manifestly, if this court, upon an appeal from a mere preliminary injunction, refuse to examine and determine the merits, and affirm the order appealed from, on the ground that the discretion of the circuit court had not been abused, the decree and mandate of this court would leave the circuit court at perfect liberty to enlarge, modify, or suspend its order, as the future circumstances of the case might justify or the ends of justice require. The point actually decided in such a case would simply be that the prima facie showing upon which the circuit court had acted was such as to justify this court in saying that discretion had not been abused. If, therefore, upon a further showing, or upon a hearing on the merits, the circuit court should be of opinion that the injunction should be discharged or modified or enlarged or made perpetual, there would be no departure from the point decided by the court. This is all that is said or decided by the Seventh circuit court of appeals in the case of Andrews v. Pipe Works, 10 C. C. A., 60–68, 61 Fed. 782.

Quite another question would arise if, on an appeal from such an order, this court, upon the record, should conclude, not only that no case was exhibited for a preliminary injunction, but also that the bill could not be entertained for any purpose. In such a situation, shall it refuse to determine the case on the merits, and refuse to direct the lower court to dismiss the bill? Must it confine itself to a mere expression of opinion that the discretion of the court had been erroneously exercised, and permit a fruitless suit to be prosecuted to a final decree, ultimately to end in dismissal? Clearly, the court ought not to idly sit, and merely advise

the counsel and lower court, but should, if it has jurisdiction, and it has before it a sufficient record to enable it to do justice, pronounce a judgment upon the merits, and direct the inferior court to do what it originally ought to have done. But if the decree awarding the injunction was one which did determine the merits of the cause, upon pleadings, proofs, and exhibits, and was, therefore, final as to the merits, though not final for the purpose of appealing under the rule of the supreme court as to what constitutes a final decree within the meaning of section 692, Rev. St., what, then, is the duty of this court upon an appeal from such a decree by virtue of the seventh section of the court of appeals act? Take the case at bar. The injunction decree appealed from was not a mere preliminary injunction, granted in the exercise of the discretion of the circuit court. The case had been fully prepared by both parties. It came on regularly to be heard on the merits, and was so heard. The court was obliged to decide, and did decide—First, that the complainant's patent was valid; second, that, when properly construed, the sweepers made by the defendant infringed the second claim of the patent owned by complainant company. Upon this basis, the court awarded, as it was bound to do, a perpetual injunction, and ordered an accounting. Under the rule of the supreme court as to an appealable final decree, this was not one, although the merits had been determined, and nothing remained to be done except to ascertain the damages. Forgay v. Conrad, 6 How. 204; Barnard v. Gibson, 7 How. 656; Humiston v. Stainthrop, 2 Wall. 106; Railroad Co. v. Swasey, 23 Wall. 405; Bronson v. Railroad Co., 2 Black, 528; Bostwick v. Brinkerhoff, 106 U. S. 3, 1 Sup. Ct. 15; Grant v. Insurance Co., 106 U. S. 429, 1 Sup. Ct. 414; Parsons v. Robinson, 122 U. S. 112, 7 Sup. Ct. 1153; St. Louis, I. M. & S. R. Co. v. Southern Exp. Co., 108 U. S. 24, 2 Sup. Ct. 6; Iron Co v. Martin, 132 U. S. 91, 10 Sup. Ct. 32; McGourkey v. Railway Co., 146 U. S. 536, 13 Sup. Ct. 170; Elder v. McClaskey, 17 C. C. A. 251, 70 Fed. 557. It was, however, an interlocutory decree, awarding an injunction, within the meaning of section 7 of the courts of appeals act, and an appeal was properly allowable. When this case came on to be heard here, this court was obliged to examine the entire record, and determine the merits of the cause, just as the circuit court had done. The rightness or wrongness of the allowance of the injunction depended here, as below, upon a determination of the merits. We were compelled, from the nature of the decree appealed from, to hear and decide upon the validity and proper scope of the second claim of the Plumb patent, and from the evidence determine whether or not the structures made by the defendant company infringed the Plumb patent as thus interpreted. The determination of each of these questions was essential to a decision upon the question of the alleged error in granting the injunction. This was recognized by the learned counsel, who assigned error in respect of the conclusions of the circuit court as to both matters. A review of the record upon these questions was necessarily a hearing upon the merits. The opinion filed upon the

original. appeal may be looked to for the purpose of construing the decree and mandate of the court. Sanford Fork & Tool Co., Petitioner, supra.

That shows that the conclusion reached in favor of an affirmance was based upon a consideration and decision of all the real and substantial merits of the controversy, save, only, the subsidiary questions pertaining to the accounting. Upon a petition to rehear, we were asked to decide how far the decree of affirmance would conclude the parties. To this, as shown by the opinion upon the rehearing, we answered as follows:

"We find no error in the action of the circuit court in awarding the injunction, and affirm the decree in so far as the question is involved by this appeal. We do not think, in the present status of this suit, no final decree having yet been announced, that we are called upon to determine the effect of this affirmance should the case be again appealed after the account of profits and damages has been stated and confirmed. The mandate will simply recite that the court finds no error in the decree awarding an injunction."

In this conclusion and statement, we followed Watch Co. v. Robbins, 12 C. C. A. 174, 64 Fed. 384.

It seems to us that the opinions and decrees of this, as a court of appellate jurisdiction, are final and conclusive upon every point actually decided, and that it is the clear duty of the lower court to give effect to the decree without modification or enlargement, in the very terms of the decree here rendered. They must be either conclusive or merely advisory; they cannot be both, or partly one and partly the other. The function of a court is to consider and decide, not to advise. There must be a general rule; and a reasonable rule, predicated upon the very objects and purposes of appellate jurisdiction, is that whatever is actually decided by such a court is finally settled, and is no longer open to review, reconsideration, or re-examination, for any purpose other than its due execution. Neither would such a decree be open for reconsideration upon a second appeal to this court. If the decree of the lower court is in accordance with the decree and mandate of this court, there is nothing to appeal from. To appeal from such a decree would, in effect, be an appeal from our own decree. No appeal lies from this court to this court. Sibbald v. U. S., 12 Pet. 488, 490; Stewart v. Salamon, 97 U. S. 361; Metcalf v. City of Watertown, 16 C. C. A. 37, 68 Fed. 859; Sanford Fork & Tool Co., Petitioner, above cited; Southard v. Russell, 16 How. 547; Durant v. Essex Co., 101 U. S. 555; Kingsbury v. Buckner, 134 U. S. 650-671, 10 Sup. Ct. 638; Smelting Co. v. Billings, 150 U. S. 31, 14 Sup. Ct. 4; Gaines v. Rugg, 148 U. S. 228, 13 Sup. Ct. 611.

In Sibbald v. U. S., cited above, the court said:

"Appellate power is exercised over the proceedings of inferior courts, not on those of the appellate court. The supreme court have no power to review their decisions, whether in a case of law or in equity. A final decree in chancery is as conclusive as a judgment at law. Martin v. Hunter's Lessee, 1 Wheat. 355; Hopkins v. Lee, 6 Wheat. 113, 116. Both are conclusive on the rights of the parties thereby adjudicated. No principle is better settled, or of more universal application, than that no court can reverse or annul its own final decrees or judgments for errors of fact or law, after the term in

which they have been rendered, unless for clerical mistakes (Cameron v. Mc-Roberts, 3 Wheat. 591; Bank v. Wistar, 3 Pet. 431), or to reinstate a cause dismissed by mistake (The Palmyra, 12 Wheat. 10), from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing. Bills of review, in cases in equity, and writs of error coram vobis, at law, are exceptions which cannot affect the present motion. When the supreme court have executed their power in a cause before them, and their final decree or judgment requires some further act to be done, it cannot issue an execution, but shall send a special mandate to the court below to award it. Judiciary Act, § 24 (1 Stat. 85). Whatever was before the court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case, and must carry it into execution, according to the mandate. They cannot vary it or examine it for any other purpose than execution, nor give any other or further relief; nor review it upon any matter decided on appeal, for error apparent; nor intermeddle with it further than to settle so much as has been remanded. Gilliland v. Caldwell 1 S. C. 194, 197; Bowyer v. Lewis, 1 Hen. & M. 557; Campbell v. Price, 3 Munf. 228. After a mandate no rehearing will be granted. It is never done in the house of lords (3 Dow, 157); and, on subsequent appeal, nothing is brought up but the proceeding subsequent to the mandate (Himely v. Rose, 5 Cranch, 316; Browder v. McArthur, 7 Wheat. 58, 59; The Santa Maria, 10 Wheat. 443)."

There remains the question as to whether this court exceeded its jurisdiction by deciding any question pertaining to the merits, or departed from the practice of courts of appeal when exercising jurisdiction by virtue of an appeal from an interlocutory decree. The right of appeal from interlocutory decrees granting an injunction was first conferred by the seventh section of the courts of appeals act. Very great hardships, especially in patent causes, had frequently resulted from the strict limitation upon the right of appeal theretofore existing. While this section does not grant an appeal from all interlocutory orders or decrees settling a right, yet it does extend relief in a very large class of cases, where rights may be very seriously affected as a consequence of the improper allowance of an injunction. The class of interlocutory decrees to which this relief is now applicable has been much enlarged by the amendment of February, 1895, already cited. This section and the amendment thereof, being intended to provide a remedy for an evil widely recognized, are entitled to a favorable construction advancing the right as far as consistent with the words of the statute. Platt v. Railroad Co., 99 U. S. 48; Heydenfeldt v. Mining Co., 93 U. S. 638. This enlargement of the right of appeal so as to embrace the class of interlocutory decrees mentioned in the statute was in accord with the well-known usages and practice of English courts of equity in granting appeals from interlocutory decrees, and of such chancery courts in states of the Union as had not by statute limited appeals to those strictly final.

The narrowness of the rule limiting appeals to technical final decrees, and the contrast with the well-known English rule, was recognized by the supreme court in Forgay v. Conrad, 6 How. 205, where the court said:

"In limiting the right of appeal to final decrees, it was obviously the object of the law to save the unnecessary expense and delay of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal. In this respect the practice of the United

States chancery courts differs from the English practice, for appeals to the house of lords may be taken from an interlocutory order of the chancellor, which decides a right of property in dispute. * * * And the execution of the order is suspended until the decision of the appellate court. But the case is otherwise in the courts of the United States, where the right to appeal is by law limited to final decrees."

It is proper, therefore, to assume that, when congress undertook to enlarge the right of appeal, it did so in the full light of the history of appeals in equity causes, and with a full appreciation of the distinction between interlocutory orders or decrees and final decrees. What the congress meant by an interlocutory decree, granting or continuing an injunction, is to be ascertained by interpreting the technical terms used in the act according to their usual significance in courts proceeding according to the well-known principles, rules, and usages of courts of equity. Thus, an appeal is allowed from an interlocutory "order" or "decree." A preliminary order, by which no question is determined upon the merits, and no right established, is termed a "decretal order," in distinction to an interlocutory decree by which something touching the merits is adjudged. Such an order was seldom regarded as subject to appeal. 2 Daniell, Ch. Pl. & Prac. (Orig. Ed.) 637. The author just cited, at page 631, defines a decree as "a sentence, or order of the court, pronounced on hearing and understanding all the points in issue, and determining the right of all the parties to the suit according to equity and good conscience." "It is either interlocutory or final. An interlocutory decree is where the consideration of the particular question to be determined, or the further consideration of the cause generally, is reserved till a future hearing." Daniell, Ch. Pl. & Prac. (4th Ed.) 986. Under the English practice, a decree was not in strictness regarded as final until enrolled, because until then it was liable to be altered by the court itself, and could not be pleaded in bar to another suit. By enrolling, the possibility of a rehearing was cut off, and it was in condition to be pleaded in bar to another suit. Id. 674 et seq. Still, the distinguishing test between an interlocutory and final decree was found in the fact that if no question of fact or law affecting the merits remained undetermined, and nothing remained unfinished except the ministerial execution of the decree, it was regarded as a final decree, and entitled as of course to enrollment. We may assume that, in using the language "interlocutory order or decree," congress had regard to the distinction between an interlocutory order and an interlocutory decree, and intended by allowing an appeal from an interlocutory order, granting or continuing an injunction, to describe those preliminary orders granting an injunction upon a hearing on affidavit, involving no determination of the merits; being allowed, at the discretion of the chancellor, upon a balancing of inconveniences. It is equally clear that, by allowing an appeal from an interlocutory decree, congress intended to allow an appeal from a perpetual injunction ordered, and allowed upon a final hearing of the merits, where the same decree refers the cause to a master for an accounting. This construction of the act has been, so far as we know, universally accepted by the circuit courts of the United States and by the circuit

courts of appeals. Richmond v. Atwood, 5 U. S. App. 151, 2 C. C. A. 596, and 52 Fed. 10; Dudley E. Jones Co. v. Munger Improved Cotton Mach. Manuf'g Co., 2 U. S. App. 188, 1 C. C. A. 668, and 50 Fed. 785; Marden v. Manufacturing Co., 15 C. C. A. 26, 67 Fed. 809; Manufacturing Co. v. Griswold, 15 C. C. A. 161, 67 Fed. 1017; American Paper Pail & Box Co. v. National Folding-Box Co., 2 C. C. A. 165, 51 Fed. 229; Curtis v. Wheel Co., 7 C. C. A. 493, 58 Fed. 784; Consolidated Electric Storage Co. v. Accumulator Co., 5 C. C. A. 202, 55 Fed. 485; Blount v. Societe Anonyme, etc., 6 U. S. App. 335, 3 C. C. A. 455, and 53 Fed. 98; Watch Co. v. Robbins, 6 U. S. App. 275, 3 C. C. A. 103, and 52 Fed. 337; Industrial & Mining Guaranty Co. v. Electric Supply Co., 16 U. S. App. 196, 7 C. C. A. 471, and 58 Fed. 732; Consolidated Peidmont Cable Co. v. Pacific Cable Ry. Co., 7 C. C. A. 195, 58 Fed. 226; Andrews v. Pipe Works, 10 C. C. A. 67, 61 Fed. 782.

When the appeal is from a decree determining the merits, awarding a perpetual injunction, and referring the cause to a master for the simple purpose of reporting damages for infringement, there can be no proper review or re-examination of so much of the decree as awards the injunction that does not include the basis upon which it was granted. Thus, though the "injunction is the backbone of the jurisdiction," as pithily observed by Judge Putnam in Marden v. Manufacturing Co., supra, yet the appeal necessarily brings up the full record, and places us in full possession of the entire case, so far, at least, as a remedy by injunction was the foundation of the jurisdiction below. It follows, therefore, that if the court finds it essential to pass upon the merits of the case in order to determine the propriety of the injunction, and in no way reserves to the lower court a right to review or re-examine the grounds upon which it had originally proceeded, the decision of this court becomes the law of the case. If that decision was an affirmance of the decree below, that decree becomes the decree of this court, and is no longer open to review, rehearing, or modification, for it has become the settled law of the case. A second appeal can only involve matters subsequent to the decree, for this court, after term passed, has no power to review, rehear, or re-examine its own decrees. This rule of practice and procedure is in accord with the usages and practice of appellate courts obtaining jurisdiction through appeals from decrees, interlocutory in character, which determine the rights of the party appealing. Under the English practice in equity, appeals from interlocutory decrees have from the most remote time been sanctioned. In the very authoritative work of Mr. Daniell upon Chancery Pleading and Practice, it is said:

"The mode of obtaining the interposition of the house of lords in the case of an appeal from the chancery court is by petition of appeal, which may be preferred from an interlocutory as well as a final order; in which respect appeals from courts of equity, by petition, differ from appeals, by writ of error, from the judgments of the courts of law, which will only lie when the judgment is final. The reason for this distinction is stated to be that courts of equity often decide the merits of a case in intermediate orders; and the permitting of an appeal, in the early stage of the proceedings, frequently saves the expense of further prosecuting the suit." 2 Daniell, Ch. Pl. & Prac. (4th Ed.) 1492.

We have before referred to the very explicit recognition by Taney, C. J., in Forgay v. Conrad, of the difference in this respect of the practice in United States courts of equity. Now, it is clear that, under the English practice of granting appeals from interlocutory decrees, the "backbone" of the jurisdiction of the house of lords would be the particular decree appealed from. Yet it was the unquestioned practice of the house of lords to make and direct a final disposition of the cause, when it had before it a full record, and the appeal was from an interlocutory decree granted upon a hearing upon the merits. If no error was found in the decree appealed from, there was a direction that the decree be affirmed. The effect of such an affirmance was to adopt the decree below as its decree, which from thence was no longer subject to alteration. If there was not a concurrence with the decree appealed from, the court did not content itself with merely reversing it, but clearly directed the lower court as to the decree which should be entered; and, if it was so possessed of the whole record as to enable it to see and adjudge that the complainant had no equity in his suit, the court would not only direct a reversal of the decree appealed from, but terminate the litigation by a direction that the bill should be dismissed. Bouchier v. Taylor (1776) 7 Brown, Parl. Cas. (1st Ed.) 414; Governors of Stephens Hospital v. Swan (1760) 5 Brown, Parl. Cas. (1st Ed.) 454; Ellis v. Segrave, Id. 478; White v. Lightburne, 2 Brown, Parl. Cas. (1st Ed.) 405; Scribblehill v. Brett, 1 Brown, Parl. Cas. (1st Ed.) 57; M'Can v. O'Ferrall, 8 Clark & F. 30; Rous v. Barker, 3 Brown, Parl. Cas. (1st Ed.) 180. This practice, at an early day, was recognized as the proper procedure for the supreme court of New York upon appeal from intermediate decrees. Le Guen v. Gouverneur, 1 Johns. Cas. 437; Bush v. Livingston, 2 Caines, Cas. 66; Bebee v. Bank, 1 Johns. 529; Dale v. Roosevelt, 6 Johns. Ch. 257.

In Le Guen v. Gouverneur, cited above, an elaborate opinion was delivered by Chancellor Kent, in which the English cases above cited were carefully reviewed, and the conclusion reached by that learned master of equity that "it was the settled rule of the house of lords in England, upon appeals, always to give such a decree as the court below ought to have given." "This," said he, "is the great and leading maxim in their system of appellate jurisprudence, and instances are accordingly very frequent in which the lords, on appeals from interlocutory orders in chancery, have reversed the order, and decided finally on the merits." He concluded by saying:

"Possessing the authority to decide finally, I think we ought to exercise it in this instance. * * * All the proofs are before us. * * * The cause is as ripe here as it was in the court below for ultimate decision; and, if we are persuaded in our minds that the facts before us can never support the allegation of fraud, we ought to say so, and put an end to the contention."

A like practice prevails in New Jersey. Newark & N. Y. R. Co. v. Newark, 23 N. J. Eq. 515–517.

Under the Tennessee statute, appeals will lie at the discretion of the chancellor from an interlocutory decree settling the rights of the parties or overruling a demurrer. Mill. & V. Code Tenn. § 3874; Mathis v. Meek, 1 Heisk. 534. It has been the settled practice of the supreme court of Tennessee, on appeals from such

interlocutory decrees, to render such decree as the chancellor should have rendered, and to finally dispose of every matter fairly exhibited by the record before it. Graham v. Merrill, 5 Cold. 631; Mathis v. Meek, 1 Heisk. 534. A like rule seems to prevail in Kentucky (Shinkle v. Covington, 83 Ky. 420); and in Minnesota (Maxwell v. Schwartz, 57 N. W. 141; Schleuder v. Corey, 30 Minn. 501, 16 N. W. 401); and in Michigan (Ryerson v. Eldred, 18 Mich. 12, 492; Perrin v. Lepper, 72 Mich. 541, 40 N. W. 859).

A difference of opinion has been exhibited in the different circuit courts of appeals.

In the First circuit court of appeals the question as to authority and proper practice has been very ably and elaborately considered, and decided in accordance with the opinion we have intimated. Richmond v. Atwood, 5 U. S. App. 151, 2 C. C. A. 596, 52 Fed. 10; Marden v. Manufacturing Co., 15 C. C. A. 26, 67 Fed. 809.

In the Second circuit the question seems to have received no conclusive consideration.

In Construction Co. v. Young, 8 C. C. A. 231, 59 Fed. 721, Judge Wallace, for the court, said:

"The language of the section permits a review of the order or decree granting or continuing an injunction so far as may be necessary to do justice in the particular case. Whenever the injunction is the main relief granted, the whole case is necessarily presented for review. When it is a substantial part of the relief granted, it may be necessary to consider the whole case on appeal. But when, as in the present case, it is incidental and subsidiary merely to other relief, an appeal only brings up for determination the question whether, conceding the other relief to have been proper, the injunction was a necessary or proper auxiliary remedy."

In Manufacturing Co. v. Griswold, 15 C. C. A. 161–165, 67 Fed. 1017, the appeal was from an interlocutory decree sustaining one claim of the patent involved, finding infringement, awarding an injunction, and decreeing an accounting. The decree was reversed, and the cause remanded, "with instructions to decree in conformity with this opinion." But in U. S. Electric Lighting Co. v. Edison Electric Light Co., 11 U. S. App. 600, 8 C. C. A. 200, and 59 Fed. 501, the court seems to have regarded its decrees affirming a decree awarding an interlocutory injunction, and ordering an account, as not depriving "the circuit court of power to suspend temporarily its injunction upon sufficient cause shown, after proper notice, whenever the ends of justice call for the exercise of the power." The American Paper-Pail & Box Co. v. National Folding-Box Co., 1 U. S. App. 283, 2 C. C. A. 165, and 51 Fed. 229, and Curtis v. Wheel Co., 20 U. S. App. 146, 7 C. C. A. 493, and 58 Fed. 784, were both appeals from preliminary injunctions, and do not necessarily present the question now under consideration, although in the latter case the court did consider the merits of the case, and upon the merits reversed the decree.

In the Third circuit the rule laid down in Richmond v. Atwood, supra, seems to be followed, though the principle is not discussed. In Union Switch & Signal Co. v. Johnson Railroad Signal Co., 17 U. S. App. 609–620, 10 C. C. A. 176, and 61 Fed. 940, an inter-

locutory decree was reversed, with directions to remand and dismiss the bill. Consolidated Electric Storage Co. v. Accumulator Co., 3 U. S. App. 579, 5 C. C. A. 202, and 55 Fed. 485, was an appeal from a preliminary injunction.

The practice of the Fourth circuit, as indicated by the case of Green v. Mills, 16 C. C. A. 516, 69 Fed. 852, is in full accord with the construction we have placed upon the seventh section. The opinion in that case was by Fuller, C. J. The appeal was from a decree granting a preliminary injunction. The court, upon an elaborate opinion, reached the conclusion that the case made by the bill was not one of equitable cognizance. The opinion concludes as follows:

"This being so, we are clearly of opinion that no ground of equitable cognizance exists; and, although the appeal is from interlocutory orders, yet, as we entertain no doubt that such a bill cannot be maintained, we are constrained in reversing these orders to remand the cause, with a direction to dismiss the bill."

Jones Co. v. Munger Improved Cotton Mach. Manuf'g Co., from the Fifth circuit, reported in 2 U. S. App. 188–204, 1 C. C. A. 668, and 50 Fed. 785, was a case in which the court assumed jurisdiction to determine the merits of the case, and did dispose of the case on its merits. Upon a rehearing, it based its authority to consider and determine the merits both on the rule of Richmond v. Atwood, supra, and upon the ground that objection to jurisdiction had been waived. The mandate, however, was corrected so as to direct the lower court only to discharge the injunction granted, although the court had decided that complainant's bill could not be maintained.

In the Seventh circuit the practice seems unsettled. Electric Manuf'g Co. v. Edison Electric Light Co., 18 U. S. App. 637, 10 C. C. A. 106, and 61 Fed. 834, and Andrews v. Pipe Works, 10 C. C. A. 60–67, 61 Fed. 782, were both cases of appeal from preliminary injunctions. In the last case cited, the court followed and applied the decision of U. S. Electric Lighting Co. v. Edison Electric Light Co., supra. As this application was only to an affirmance of a preliminary injunction, it ought not to be regarded as a concurrence in the rule of the Second circuit, where the appeal was from an injunction granted upon a determination of the full merits of the case.

In the Ninth circuit the rule of Richmond v. Atwood, supra, was adopted, and an affirmance of an interlocutory decree held to be final. Consolidated Peidmont Cable Co. v. Pacific Cable Ry. Co., 15 U. S. App. 216, 7 C. C. A. 195, and 58 Fed. 226.

In this circuit the case of Watch Co. v. Robbins, 6 U. S. App. 275, 3 C. C. A. 103, and 52 Fed. 337, is in conflict with the weight of authority in courts of co-ordinate jurisdiction, and is not in accord with the views now entertained by this court. So much of the opinion as deals with the question of the enlargement of jurisdiction by consent is eminently sound, and meets our unqualified approval. So far, however, as the opinion proceeded upon the theory that this court, although it might be obliged to consider the

entire merits of the case, could not authoritatively decide or determine any question pertaining to the merits, and should limit its decree to a mere ruling as to whether the injunction should be retained or dissolved, it does not meet the approval of the court.    In overruling that case, a majority of the court who then constituted the court now concur, being a majority of the present court.    When that case came on to be again heard, this court found itself in possession of a full record, and compelled to examine the entire merits of the cause, inasmuch as the injunction appealed from had been granted only after a full determination of the merits upon all the evidence.    This court then said:

"The point was mooted whether we should examine the record as upon an appeal from a final decree, or only examine the question whether the court below had exercised proper discretion in the issuing of an interlocutory injunction. It was decided that we could not hear and finally determine the merits of the controversy as to the validity of the patent and its infringement. Watch Co. v. Robbins, 6 U. S. App., 275, 3 C. C. A. 103, and 52 Fed., 337. In looking into the record, however, to determine whether the discretion of the circuit court was properly exercised, we have found ourselves obliged to consider the validity of the patent, and its infringement, with the conclusion above stated. As the patent is valid, and it was infringed by the defendants, the court necessarily exercised proper discretion in granting the injunction appealed from, and its decree is affirmed." Watch Co. v. Robbins, 22 U. S. App. 601, 634, 12 C. C. A. 174, and 64 Fed. 384.

It has been suggested that inasmuch as an appeal under section 7 does not, unless specially ordered, operate as a stay of the proceedings, this differentiates the proper practice under this act from that observed by appellate courts under appeals which ipso facto suspend further steps under the decree appealed from.    The fact that the appeal does not suspend proceedings under the decree appealed from, except at the discretion of the court allowing the appeal (In re Haberman Manuf'g Co., 147 U. S. 525, 13 Sup. Ct. 527), is not at all peculiar.    The provision on that subject is precisely the rule of the house of lords in force since 1807.    The history of the practice in this respect is given very fully by Chancellor Walworth in Hart v. Mayor of Albany, 3 Paige, 381.    From that case it appears that prior to 1772 an appeal from an interlocutory decree was held to suspend all further proceedings in the whole suit pending the appeal.    But in that year the case of Pomfret v. Smith, 4 Brown, Parl. Cas. 700, was decided by Lord Apsley, who decided that his jurisdiction was suspended only as to the matter appealed from.    This was the state of the law when these states separated from the mother country, and the rule stated by Lord Apsley, in the case cited above, was adopted by the courts of New York.    Green v. Winter, 1 Johns. Ch. 77; Messonier v. Kauman, 3 Johns. Ch. 66.    The jurisdiction of the lords as a court of appeals being finally established and acknowledged, they saw the necessity to prevent the delays and injustice incident to such a stay of proceedings without bond, and adopted in 1807 a rule that the proceedings in the lower court upon such an appeal should not be stayed, but that it should be within the discretion of the chancellor to stay the proceedings or not, according to the circumstances. Burke v. Brown, 15 Ves. 184; Hovey v. McDonald, 109 U. S. 150–

160, 3 Sup. Ct. 136; In re Haberman Manuf'g Co., cited above. The fact that section 7 has been so carefully framed upon the lines of the rule and practice of the house of lords with respect to such appeals strengthens the view we have taken with respect to the meaning of the statute, and as to the proper authority and practice of this court thereunder.

The conclusion we have reached is in the line of the relief intended by congress to be afforded suitors whose rights are affected by temporary submission to an inconclusive decree. The right to appeal at that stage of the cause is optional. If one affected by the action of the court in allowing, dissolving, or continuing an injunction see fit, he may await a final decree, and then appeal. But, if he elects to appeal with the result that another inconclusive decree is rendered, his last estate is no better than his first, for he must proceed with the cause, and submit until he can again appeal. The statutory purpose was to save the litigants from being obliged to submit to the injury incident to an inconclusive decree, and to all the expense of an accounting. But if, after an appeal, resulting in an inconclusive affirmance, he must still proceed with an accounting, which, after all, may prove unnecessary, the statute will have amounted to little. The doctrine of res adjudicata rests upon the maxim that there should be an end to litigation. No doctrine rests upon sounder principles of public policy, or is more entitled to a wide application. If, under an appeal from a decree awarding an injunction, this court obtains such a record as to enable it, with justice to the parties to the appeal, to hear and consider the merits of the cause, it would be most anomalous if we have not the power to decide. The judicial function of considering involves the function of determining. The decision of an appellate court is final, and no second appeal is maintainable, except as to matters reserved, or proceedings subsequent to the first appeal.

These considerations lead us to the conclusion that inasmuch as it was decided upon the former appeal that the patent of the complainant was valid, and that the defendant had infringed it, and a perpetual injunction had been properly awarded, there was no power in the circuit court to dissolve, modify, or suspend the injunction. There was no room for the exercise of judicial discretion. The complainant was entitled to the remedy by injunction which had been accorded him, and that relief had been affirmed by this court. The theory that the supersedeas allowed when the appeal was granted operated as a license to make and sell has no sound foundation. It did nothing more or less than to suspend the injunction pending the decree. There is therefore nothing in the suggestion that, in justice, the defendant should be allowed to complete what it had begun, under license of the court. The conditions of the bond afford no room for the idea of a license. The condition was a proper one, as a mere measure of damages in case the appellant failed to successfully prosecute its appeal.

The decree dissolving the injunction will be reversed, and the cause remanded, with directions to take such other and further proceedings as are not inconsistent with this opinion.