## J. P. JORGENSON CO. v. RAPP et al.

(Circuit Court of Appeals, Ninth Circuit. December 2, 1907.)

### No. 1,511.

1. COURTS—CIRCUIT COURT OF APPEALS—JURISDICTION—ALASKA—APPEAL—APPEALABLE ORDERS—INTERLOCUTORY INJUNCTION.

The jurisdiction of the Circuit Court of Appeals of an appeal from an interlocutory order granting or dissolving an injunction, or refusing to grant or dissolve an injunction, under Code Civ. Proc. Alaska, § 507, giving the right of appeal from such orders without limitation as to the amount involved, is not limited by the provision of section 504 of such Code respecting appeals from final judgments or orders, and which limits such appeals to cases in which the amount or value involved exceeds $500.

[Ed. Note.—Jurisdiction of Circuit Court of Appeals in general, see notes to Lan Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

2. SAME—AMOUNT IN CONTROVERSY.

In determining the appellate jurisdiction of the Circuit Court of Appeals, the amount of the judgment from which the appeal or writ of error may be prosecuted, and not the amount originally involved in the suit, is the amount in controversy.

3. JUDGMENT—VALIDITY—MATTER OUTSIDE OF ISSUES.

In an action of replevin, in which the only issues presented by the pleadings were the ownership and right to possession of the property and

the right of defendants, in case such issue should be determined in their favor, to recover their damages sustained through the taking of the property by plaintiff under the writ, the court had no power, on finding the ownership and right of possession in plaintiff, to render judgment in favor of defendants on a quantum meruit for services rendered in salving the property, which was wholly outside the issues, and such a judgment is void for want of jurisdiction to decide that question.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 435–437.]

Ross, Circuit Judge, dissenting.

Appeal from the District Court of the United States for Division No. 1 of the District of Alaska.

This is a suit in equity, commenced by the appellant in the District Court of the United States for the District of Alaska, Division No. 1, and comes to this court on appeal from an order of that court denying a motion for an injunction pendente lite. The appellant is a corporation, and is the plaintiff in the bill in equity. It was also the plaintiff in a replevin suit previously commenced in the same court to recover possession of certain logs which it owned, and which in the process of being towed as a raft from near Ideal Cove to Juneau, Alaska, by two steamers, the Peerless and the Seolin, parted the towline and broke adrift in a storm, and were subsequently gathered up and taken possession of by the defendants. The steamer Peerless was employed by the plaintiff. The steamer Seolin was controlled and operated by Harry Hanson, the owner and also the engineer, and one of the defendants. The other defendants, with the exception of the defendant H. F. Rapp, were employed on the steamer Seolin during the towing service. This vessel, with its officers and crew, was employed by the Peerless to assist in towing the raft of logs when the towline parted and the logs broke adrift on September 27th, 1906. On September 29, 1906, the same defendants that were employed on the steamer Seolin on September 27, 1906, when the towline parted, with the addition of the defendant Rapp as master, took the steamer Seolin and proceeded to gather up the logs that broke away from the tow on September 27th. The work of the defendants in gathering up the logs occupied the 29th and 30th of September and the first nine days of October, 1906. The plaintiff claimed the logs after their recovery, and offered to pay the defendants $400 for their services in recovering them. The defendants rejected the offer, and thereupon the plaintiff demanded possession of the logs in writing. The demand was refused, and thereupon plaintiff brought its replevin suit, alleging its ownership of the logs and the unlawful possession and claim of the defendants. The plaintiff obtained possession of the logs under the writ of replevin, upon giving the usual bond.

In their original answer to plaintiff's complaint in the replevin suit, the defendants denied plaintiff's ownership and possession of the logs as alleged in the complaint, claimed the exclusive right, title, and ownership of the logs in themselves, and alleged that, while they were running and operating the steamer Seolin on the 29th of September, 1906, they discovered the logs floating upon the waters of Stevenson Passage at a point between Midway Island and Taku Inlet in southeastern Alaska; that the logs were loose and scattered over a distance of several miles, absolutely abandoned by whomsoever owned them; that, if they were ever the property of the plaintiff, it had, prior to the rescue and picking up of the same by the defendants, abandoned the same and left them at the mercy of the elements. The defendants further alleged, in paragraph 6 of the answer, that they spent considerable time, to wit, 12 days, in rescuing and picking up the logs referred to, and that the cost of the defendants in so recovering and picking up the said logs was the sum of more than $600. The defendants further alleged, in the seventh, eighth, and ninth paragraphs of their answer, that they had engaged a sawmill for the purpose of sawing said logs, but had been prevented from so doing by the commencement of the replevin suit and the taking of the logs out of the possession of the defendants; that the logs taken from the defendants contained 161,487 feet of lumber, worth $7.50 per 1,000 feet, or a total sum of $1,211;

that they had obligated themselves and had become liable to the owners of said sawmill in the sum of $322.50; wherefore defendants demanded judgment against the plaintiff for the return of the logs and that they have and recover the sum of $922.50, being the amount of the loss sustained by them by reason of the plaintiff taking the logs from their possession, and for their costs and disbursements in the suit to be taxed. The plaintiff moved the court to strike paragraph 6 from the answer, on the ground that the same was irrelevant. After argument, this motion was granted, to which the defendants took no exception. Thereupon the defendants filed an amended answer, to which some objection was made and sustained by the court, and thereupon the defendants filed the second amended answer. In this second amended answer the defendants, as in their original answer, denied plaintiff's ownership and possession of the logs, claimed the exclusive right, title, and ownership of the logs in themselves, alleged their discovery of the logs floating upon the waters of Stevenson Passage, where they were loose and scattered over a distance of several miles, abandoned by whomsoever owned them, and alleged the engagement of the sawmill to saw up the logs, upon an agreement to pay for the same the sum of $215, based upon an estimate of $1 per 1,000 feet, upon an estimate of 215,000 feet in the logs; that the logs actually contained 161,487 feet of lumber, of the reasonable value of $7.50 per 1,000 feet, or a total sum of $1,211. The defendants thereupon prayed for judgment that the logs be restored to them, or, in case a redelivery could not be had, that they recover from the plaintiff the value of the logs, amounting to the sum of $1,211, and the sum of $215 as damages for the rental of the sawmill, and for costs and disbursements in the suit to be taxed.

In plaintiff's reply it denied defendants' claim of right to the logs, and alleged, among other things, that on or about the 22d day of September, 1906, plaintiff employed the steamer Peerless to tow for it the raft of logs described in the complaint and in the answer from near Ideal Cove to Juneau, Alaska, and while engaged in so doing the steamer Peerless became disabled and the captain of the vessel proceeded to Juneau for help, where he employed the steamer Seolin to aid the Peerless in towing said logs to Juneau; that while the steamers Peerless and Seolin were towing the raft of logs on September 27, 1906, a storm arose, and during the storm and by reason thereof the towing line from the steamers to the logs broke, and the boats, on account thereof and on account of the weather and darkness, were compelled to leave the logs for the time being, and by reason of the stress of weather were compelled to run to Snettisham Bay for the night and for security from the storm; that the steamer Peerless was in a disabled condition, and the next day, after looking for the raft of logs, the weather being very rough, it was decided to go to Juneau for repairs to the vessel; that the repairs were necessary and prerequisite to her being able to continue the work of gathering up the logs and taking them to Juneau; that before the repairs were completed the steamer Seolin also came to Juneau, and on September 29th, before the repairs of the Peerless had been completed, started out under the direction and control of the defendants for the sole purpose of seizing and appropriating said raft of logs and the logs therein to their own use; that the defendants (except the said H. F. Rapp) were on the steamer Seolin and engaged in operating her when she was engaged in towing said logs and when the tow line broke and the logs got away from the steamers; that the plaintiff never abandoned the logs and never intended to abandon them or to leave them or any of them without the intent to recover them; that the defendants well knew that the plaintiff had not abandoned the logs; that in taking possession of the logs the defendants acted wrongfully and with intent to seize and appropriate to their own use the logs of the plaintiff, well knowing that the plaintiff had not abandoned the logs or any of them; that there was no danger or risk to speak of that said logs could or would get lost, as by reason of the surrounding shores and the wind and tides then and there prevailing said logs would drift ashore, and there would remain until such time as plaintiff could go for them; that in leaving said logs, or any of them, in said inland waters, plaintiff was taking no risk of loss or injury to any of them.

The case was, by stipulation of the parties, tried before the court without a jury. The court found the facts to be substantially as alleged in plaintiff's

complaint and reply, and, among other things, it was found that the logs were the logs of the plaintiff, and that plaintiff never parted with or lost the possession of said logs with intent to not refind and retake them, and never at any time abandoned its intent to rescue or recover said logs, or any of them, which intent at all times it maintained. The court found the additional fact that "the steamer Seolin left Snettisham Bay later in the same day (September 28th), terminating her service under said contract to aid the steamer Peerless, and reached Juneau the same day." The court found, also, that while said logs were in Douglas, Alaska, "the plaintiff claimed them of defendants, and offered in settlement for the defendants' pretended claim to said logs, and for their work in picking them up and towing them to Douglas, if they would turn said logs over to plaintiff, the sum of $400." The court found also these further facts: That the said steamer Seolin had a crew upon her in gathering up said logs constituted of H. F. Rapp, Harry Hanson, August Peterson, William Moore, and John McLain; and the court found that the labor and services performed by said defendants was meritorious and for the benefit of the plaintiff, and that the defendants were entitled to the reasonable worth and value of their services so performed in the saving of said logs for the plaintiff, booming the same, and taking the same to Douglas, Alaska; and the court found that a reasonable amount to be allowed to the crew of the said steamer Seolin was as much as, to wit: To H. F. Rapp, master of said steamer, the sum of $66; Harry Hanson, chief engineer and owner of said steamer, the sum of $235; August Peterson, deck hand, the sum of $44; William Moore, fireman, the sum of $44; —————— Parrish, $44; John McLain, cook, the sum of $44—making a total amount of $477, which said amount should be paid by the plaintiff to the defendants before the plaintiff should be entitled to have the ownership of said logs to be adjudged in it. The court found, as conclusions of law, based upon the foregoing facts, "that H. F. Rapp, Harry Hanson, Andy Parrish, William Moore, August Peterson, and John McLain rendered good and meritorious services herein with themselves and steamer Seolin in picking up and saving a boom of logs of the plaintiff in the manner set forth in the finding of fact herein, and that for said service said defendants are entitled to recover of and from the said plaintiff the sum of $477. The court concludes, further, that said defendants should recover judgment herein against said plaintiff for said amount. Let judgment be entered herein accordingly. The plaintiff is the owner of the logs in question."

Thereupon the plaintiff moved the court for a new trial, alleging surprise which ordinary prudence could not have guarded against, in that the court, in rendering its decision, interjected for the first time issues in said action, to wit, that plaintiff was indebted to the defendants for work and labor done by the defendants for the plaintiff and for benefits received by plaintiff from defendants under an implied contract to pay for same and for which plaintiff was responsible; that said issues were not raised by the pleadings, and an attempt to raise them had been stricken from the pleadings by order of the court; that such issues form no part of the theory of the case on the part of either party on the trial thereof and prior to the decision of the court after final submission of the case for the court's final determination. Plaintiff alleged that it was in fact injured, and not benefited, by the defendants going for said logs, in that, having picked up 158,904 feet of said logs, it would not pay to employ vessels and men to hunt for and gather up the remaining 54,096, board measure, that remained of said boom or original raft of logs; that, said issue being raised for the first time on the trial by the court after final submission, plaintiff has no opportunity to meet the said issues so mentally framed and passed upon by the court; that plaintiff on a new trial, if such an issue is allowed by the court as a proper issue in this action, can prove damage rather than benefit from the actions of the defendants; and that it did not, impliedly or otherwise, authorize or ratify the action of defendants in picking up the property replevied and compelling plaintiff to litigate and prove its title to said property. Plaintiff also alleges the insufficiency of the evidence upon the facts found to justify the decree, or any judgment in favor of the defendants. The court denied the motion for a new trial, and thereupon entered the following judgment in favor of the defendants: "That the above-named defendants have and recover of and from the above-named plaintiff

the sum of $477 and costs of suit, for which let execution issue. To which plaintiff excepts, and exception allowed."

The plaintiff thereupon moved the court to vacate and set aside the judgment on the ground that it was one for services, work, and labor performed by the defendants for plaintiff on a basis of quantum meruit; that there was no issue in the said action or in the pleadings based upon any services, work, and labor performed upon a quantum meruit or otherwise; that the judgment was supported by no issue in the action, and was, therefore, null and void, and should be set aside, as the court had no jurisdiction to render any such judgment under the pleadings. The court denied the motion, and thereupon the plaintiff brought this suit in equity to restrain the enforcement of the judgment, alleging that it had no plain, speedy, and adequate remedy at law or otherwise, and had no remedy except that prayed for in the bill, for the reason that the amount of said judgment is less than the sum of $500, and is, therefore, not subject to correction by an appeal to the United States Circuit Court of Appeals. It is also alleged that the judgment is a cloud upon and a menace to the title and rights of the plaintiff to its personal and real estate in said district, and may be at any time made a lien against plaintiff's real estate; that the plaintiff is the owner of certain valuable real estate in and near the town of Juneau, Alaska, to wit, a sawmill and the land upon which it stands, and a large business building and establishment, together with land upon which it stands, located on Front street, in the city of Juneau, Alaska, with valuable improvements thereon, worth thousands of dollars, and personal property; that plaintiff is without adequate or any remedy at law, and will be irreparably jeopardized and injured in its property rights if said judgment is not declared null and void and the collection is not enjoined; that defendants are threatening to and will, after January 1, 1908, issue execution on said judgment to collect the same against the plaintiff, unless stayed and prevented from so doing by injunction and order of the court; that defendants and each of them have no property exempt from execution, and are wholly irresponsible to, and unable to, respond in damages in any amount in event an execution is issued in the action described in the complaint, and enforced or attempted to be enforced against the property of the plaintiff pending this litigation and prior to the final determination of the suit in equity on its merits, and damage to plaintiff. Wherefore plaintiff prayed that the judgment described in the complaint be declared and adjudged to be null and void; that the defendants be restrained from issuing any execution or taking any steps looking to the collection or securing of said judgment during the pendency of this action, and until the further order of the court; that defendants and each of them be forever enjoined from issuing any execution or taking any steps under said judgment looking to the collection or securing of the same.

Upon this bill of complaint, verified by the president of plaintiff corporation and supported by affidavits, the plaintiff moved for an injunction restraining the defendants from taking any proceedings under, and particularly from issuing any execution under, the judgment described in the complaint until the final hearing of this action when heard and determined upon its merits, and until the further order of the court. Upon the hearing of this motion the court entered an order that the motion be overruled and the injunction denied. Thereupon the plaintiff appealed.

William T. Love, Albert H. Elliot, and Heid & Love, for appellant. Jno. R. Winn and Newark L. Burton, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The appellees move to dismiss the appeal on the ground that this court has no jurisdiction to entertain the appeal in this case, for the reason that the amount involved or the value of the subject-matter does not exceed the sum of $500. Section 504 of the Alaska Code of Civil Procedure provides as follows:

"Appeals and writs of error may be taken and prosecuted from the final judgments of the District Court for the District of Alaska or any division thereof direct to the Supreme Court of the United States in the following cases: * * * and that in all other cases where the amount involved or the value of the subject-matter exceeds five hundred dollars the United States Circuit Court of Appeals for the Ninth Circuit shall have jurisdiction to review by writ of error or appeal the final judgments, orders, of the District Court."

Section 507 of the same Code provides as follows:

"An appeal may be taken to the Circuit Court of Appeals from any interlocutory order granting or dissolving an injunction, refusing to grant or dissolve an injunction, made or rendered in any cause pending before the District Court within sixty days after the entry of such interlocutory order. The proceedings in other respects in the District Court in the cause in which such interlocutory order was made shall not be stayed during the pendency of such appeal, unless otherwise ordered by the District Court."

The appellees refer to the punctuation in the latter part of section 504, giving the Circuit Court of Appeals "jurisdiction to review, upon writ of error or appeal, the final judgments, orders, of the District Court." It is claimed that this part of the section should read "the final judgments or orders," or "the final judgments and orders." This is undoubtedly correct. The conjunction "or" or "and" has probably been accidentally omitted and a comma inserted where it does not belong. The contention of the appellees is that this section, thus corrected, must then be reconciled with section 507, by construing the latter section as though it provided for an appeal only from a final order of the District Court "where the amount involved or the value of the subject-matter exceeds five hundred dollars." We do not think this section can be so construed. It provides distinctly for an appeal from an interlocutory order, and provides, further, that the "proceedings in other respects in the District Court in the cause in which such interlocutory order was made shall not be stayed during the pendency of such appeal, unless otherwise ordered by the District Court."

Act March 3, 1891, c. 517, § 7, 26 Stat. 828 [U. S. Comp. St. 1901, p. 550], establishing the Circuit Court of Appeals, originally provided that an appeal might be taken from an interlocutory order granting or continuing an injunction in a District or Circuit Court to the Circuit Court of Appeals, but limited the appeal to causes in which an appeal "from a final decree" might be taken under the provisions of the act to the Circuit Court of Appeals. This limitation was repealed by Act April 14, 1906, c. 1627, 34 Stat. 116 [U. S. Comp. St. Supp. 1907, p. 208], and in lieu thereof it is now provided "in any case an appeal may be taken from such interlocutory order or decree granting or continuing such injunction * * * to the Circuit Court of Appeals."

Section 507 of the Alaska Code and section 7 of the act of March 3, 1891, are in accord and should be read in pari materia. In re Alexander McKenzie, 180 U. S. 536, 548, 21 Sup. Ct. 468, 45 L. Ed. 657. The purpose of Congress in this legislation has been to enlarge and not to restrict the jurisdiction of the Circuit Court of Appeals with respect to interlocutory injunctions. Richmond v. Atwood, 52 Fed. 10, 22, 2 C. C. A. 596, 17 L. R. A. 615; Smith v. Vulcan Iron Works, 165 U. S. 518, 525, 17 Sup. Ct. 407, 41 L. Ed. 810. It is plain that the jurisdiction of the

Circuit Court of Appeals on appeal from an interlocutory order granting or dissolving an injunction, or refusing to grant or dissolve an injunction, under section 507 of the Alaska Code, is not limited by the provisions of section 504 of that Code respecting appeals from final judgments or orders of the District Court.

It may be said, however, that the amount involved in the replevin suit was the value of the logs, alleged in plaintiff's complaint to have been $1,000, that the plaintiff could have sued out its writ of error from the Circuit Court of Appeals to set aside this judgment upon that complaint, and, this being a remedy at law, it cannot prosecute the suit in equity. The amount originally involved in the replevin suit was $1,000, as alleged in the complaint; but the amount involved in the judgment which is now the subject of controversy between the plaintiff and defendants is $477. In determining the appellate jurisdiction, the amount of the judgment from which the appeal or writ of error may be prosecuted is the amount in controversy. New Mexico v. Atchison, Topeka, & Santa Fé, 201 U. S. 41, 26 Sup. Ct. 386, 50 L. Ed. 651. As a writ of error did not lie from the Circuit Court of Appeals to review this judgment for $477, the only remedy that plaintiff had was a suit in equity.

Coming, now, to the merits of the appeal, the question is: Had the court authority to enter the judgment it did in favor of the defendants? The issues submitted to the court by the pleadings were: (1) Which of the parties to the action was the owner and entitled to the possession of the logs? (2) If the defendants were the owners, and entitled to the possession of the logs, were they entitled to recover damages for their value from the plaintiff for taking them out of the possession of the defendants by their replevin suit, and were they also entitled to recover damages for liability incurred by the defendants for the rent of the sawmill to cut the logs into lumber?

Upon neither of these issues did the court render any judgment. The judgment rendered by the court in favor of the defendants was for meritorious services rendered by the defendants in the recovery of the logs; but this question was not presented to the court by the pleadings for its determination, and was wholly outside of and beyond the issues involved in the case. The judgment was also contrary to the findings of fact made by the court. The court found that the plaintiff was the owner of and in the possession of the logs prior to the time when the logs were taken possession of by the defendants. The court also found, as a conclusion of law, that the plaintiff was the owner of the logs. Nevertheless it entered no judgment with respect to the ownership or possession by the plaintiff, but directed a judgment to be entered in favor of the defendants upon a quantum meruit. It follows that, as the judgment was not based upon the pleadings or issues in the case and the judgment was contrary to the findings of fact, the court had no jurisdiction to make and enter the judgment it did in this action. In Black on Judgments the void character of such a judgment is discussed with that author's usual clearness in sections 184, 241, and 242. In the last section the author says:

"Besides jurisdiction of the person of the defendant and of the general subject-matter of the action, it is necessary to the validity of a judgment that

the court should have had jurisdiction of the precise question which its judgment assumes to decide, or of the particular remedy or relief which it assumes to grant. In other words, a judgment which passes upon matters entirely outside the issue raised in the record is so far invalid. 'Jurisdiction' may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and, third, the point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that, because A. and B. are parties to a suit, a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over those particular interests which they choose to draw in question that a power of judicial decision arises. If, in an ordinary foreclosure case, a man and his wife being parties, the court of chancery should decree a divorce between them, it would require no argument to convince every one that such decree, so far as it attempted to affect the matrimonial relation, was void; and yet the only infirmity in such a decree would be found, upon analysis, to arise from the circumstance that the point decided was not within the substance of the pending litigation. In such a case the court would have acted within the field of its authority and the proper parties would have been present; the single, but fatal, flaw having been the absence from the record of any issue on the point determined. The invalidity of such a decree does not proceed from any mere arbitrary rule, but rests entirely on the grond of common justice. A judgment upon a matter outside of the issue must of necessity be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an effect to matters adjudicated. And this is the principal reason why judgments become estoppels." Munday v. Vail, 34 N. J. Law, 418.

In the remainder of the section the author cites numerous cases in support of the doctrine cited in the text.

The action of the court in the present case in denying the motion for an injunction pendente lite was, therefore, a denial of an equitable relief to which the plaintiff was clearly entitled upon the record as presented to the court. The interlocutory decree of the court must therefore be reversed, with directions to issue an injunction in accordance with the prayer of the bill of complaint.

ROSS. Circuit Judge, dissents from the judgment on the ground that under the statute of Alaska the plaintiff in the replevin action has the right to review by writ of error the judgment there given, as it wholly failed to determine the issues made by the pleadings in the case, for which reason, as also for the reason that the money judgment there given in favor of the defendant is outside of the issues made in the case in which it was rendered, and therefore outside of the matters in controversy there, the amount of that judgment should not be regarded as a test of the right of the plaintiff to have the same reviewed.